PRATHER *v.* STATE.

Crim. 3964

Opinion delivered November 18, 1935.

*Floyd Terral,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* for appellee.

BAKER, J. Ike J. Prather, Otto Ray Bingham, Fred Williams, alias Fred Harvey, and James Edward McCauley were jointly indicted in the Pulaski Circuit Court under § 2438 of Crawford & Moses' Digest upon a charge of possessing burglar's tools. That section of the statute reads as follows: "Possession or manufacture of burglar's tools. Any person who makes, mends, designs or sets up, or who has in his custody or concealed about his person, any tool, false key, lock pick, bit, nippers, fuse, force screw, punch, drill, jimmy, bit, or any material, implement or other mechanical device whatsoever, adapted, designed or commonly used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door shutter, or window of a building of any kind, shall be guilty of a felony, and upon conviction thereof, shall be punished by imprisonment in the penitentiary for not less than two years, nor more than ten years."

Upon a separate trial, Prather was convicted and has appealed. The material part of the indictment is as follows: "The said Otto Ray Bingham, Fred Williams, alias Fred Harvey, James Edward McCauley and Ike J. Prather, in the county and State aforesaid, on the 30th day of March, 1935, did unlawfully, wilfully, and feloniously have in their possession certain tools, hammer, punches, screwdriver, pliers, wrench, caps and fuses, nitroglycerine, flashlight, gloves and bag, and implements and mechanical devices adapted, designed, and commonly used for breaking into vaults, safes, railroad cars, boats, vessels, warehouses, stores, shops, offices, dwelling houses, door shutters and windows of buildings."

The principal contention made upon this appeal is to the effect that the particular tools, appliances, or devices found in the possession of the appellant were not such that they might be called or designated as burglar's tools and on that account, without regard to the use the defendant might have intended to make of them, he was not guilty.

The rule in the case of *Satterfield* v. *State,* 174 Ark. 733, 296 S. W. 63, is invoked by appellant to substantiate and make good his contention that tools, appliances and devices found in his charge or possession were of such kind and character that he had the right to have them in possession, as being the every-day working tools of mechanics, plumbers, carpenters, or other persons following lawful pursuits in every community, and he argues that to prohibit the possession of such tools, devices, appliances and materials, as were found under his control and in his possession would be violative of common rights, which are so clearly recognized as being possessed by all citizens, as to make any such attempt to regulate or prohibit the use or possession thereof illegal and void. In the Satterfield case, cited above, it was said: ''This statute was passed in 1915, and has never before been before this court for construction. It is notable that the statute does not require an intent to commit the crime of burglary to make the possession of such tools or implements unlawful. The bare possession thereof, without anything more, is made a felony. In this respect it is unlike the statute of some of the other States. This being a criminal statute, it must be strictly construed.''

We are in accord with the foregoing announcement. It must be observed, however, that the above statement does not amount to a prohibition of proof or evidence that would establish facts proving or tending to prove that the defendant had in his possession such a group or selection of tools, devices, or materials as might be found to be more nearly suitable for breaking into houses, or opening locked doors and windows, or by explosive forces opening safes or strong boxes, where valuables might be stored or kept, than for any lawful purpose.

The statute does not attempt to describe burglar's tools. Indeed, we doubt if there are any particular or peculiar tools made, used, or adapted solely for burglary. It prohibits the possession of a false key, lock, pick, bit, nippers, fuse, force screw, punch, drill, jimmy, bit, or any material, implement or other mechanical de-

vice whatsoever, adapted, designed or commonly used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter, or window of a building of any kind.

The word "bit," used twice in the section, means perhaps the common or ordinary bit possessed by every carpenter and wood workman. We know that it is not in every instance in which one may have a false key that the law is violated, as many large enterprises, particularly those like hotels, possess or have what are called skeleton keys, or master keys, which will unlock all rooms in the building, or maybe just those on a particular floor. Automobile mechanics have force screws with which they separate or draw apart pieces of the machinery upon which they work. Locksmiths have different kind of tools which are designed to pick locks. Practically all workmen use nippers, and wood workmen and smiths use punches. Explosives, such as nitroglycerine, are in common use in every community. Those traveling upon highways frequently find men using these high explosives to move rock, trees or stumps.

Therefore, should we follow the theory upon which this case is presented to us by appellant, that is to say, if the tools, devices, appliances, or materials, were such as might be reasonably used on proper occasions by honest workmen in the prosecution of their respective vocations, then the statute would most probably be futile, so far as its enforcement is concerned. At least, courts and juries would be unable to convict any burglar or any man who might be indicted, unless there was found in the possession of such person some tool, manufactured for or used by burglars, and which would be unsuited for use otherwise. Such construction of this statute would be unwise and would tend to defeat its beneficent purpose in the protection of society against professional lawbreakers.

Perhaps, no fixed rule or announcement should be made as a criterion for guilt or innocence, except that in every instance the matter under investigation should be determined as a matter of fact, controlled or ex-

plained by all of the conditions, circumstances, and such pertinent collateral matters as might be present.

What the writer has just said above may be illustrated by some comparisons and contrasts. No one would think that a man should be indicted or convicted because he had in his possession a sledge hammer, or because he had in his possession a punch, or even pistols or revolvers upon a charge of possessing burglar's tools, though perhaps no other implements or instruments are in more common use by those engaged as burglars than small firearms.

The evidence in this case may be said to be substantially to the following effect, without quoting the exact language of witnesses.

There was found in one of the compartments of a grip or handbag belonging to these parties, who had been indicted, a sledge hammer, with a shortened handle, and a short punch, an ordinary screwdriver, caps used to set off high explosives, nitroglycerine, gloves or mittens, electric fuses, four pistols, with extra cartridge clips for holding cartridges for immediate reloading of pistols, and a flashlight. All of the parties were arrested at or about the same time and had been at rooming houses in two or three different places in the city of Little Rock, prior to their arrest, where they had registered and given fictitious names at the time of registering at the several places where they stopped. The foregoing is a list of the working tools they had in their possession, and we are unable to recognize all of these different articles as being the necessary working tools of any class of labor with which we are acquainted. It is true, as suggested by questions asked of police officers arresting these men, that the pistols are such as used by peace officers and nitroglycerine might be used by oil well drillers, or by some one working in a quarry, or upon a highway.

One other item in possession of the parties, or at least found in the handbag with the other tools and appliances, may be listed as a household necessity, the possession of which is perhaps highly commendable and as civilization rises to its highest pinnacle, perhaps more

in use than any other article described or found in possession of appellant and his associates, and that article is soap. The pistols and soap were not mentioned in the indictment.

All of these facts were properly presented to the jury. Under proper instructions the jury had the right to determine the question or fact as to whether these many different articles and appliances, tools, and materials were kept and held by those in possession thereof, as burglar's tools or appliances, having in view useful and lawful purposes for which they might be used.

There is perhaps no fact better known among enforcement officers at this particular time than the one that burglars use nitroglycerine to blow open vaults and safe doors, that they use soap to build a receptacle at the edge of the door in which the nitroglycerine is poured, so that it flows between the edge of the door and the body or wall of the safe or vault. When the crevice is filled, the "soup" is exploded by a dynamite cap, or at least a cap of explosive force, which sets off or detonates the nitroglycerine.

It is equally well known that hammers are used to knock off combinations on safes, that punches are then used to drive out the spindle, on which are fixed the tumblers which keep the bolts in place to prevent the opening of the door; that those who follow such crimes as burglary and larceny attempt to escape detection by wearing gloves while plying their nefarious trade, thereby preventing the discovery of finger prints which might later cause detection. It is significant in this case also that the testimony shows that one of the guns or pistols had the palm print of the appellant upon it, and also his finger print appeared upon the bottles of nitroglycerine.

This case differs materially from *Jones* v. *State,* 181 Ark. 336, 25 S. W. (2d) 752, wherein an indictment was found under the same section of the Digest.

From the foregoing it must be seen that a charge of this kind is like any other charge, one that may be or may not be susceptible of proof; in other words, it is a question of fact, which, when proved beyond a reason-

able doubt, and so determined by a jury, there is little left for review on appeal.

We are not saying that any tool that could or might be used by a burglar would be such as would justify a conviction, but we are saying that a combination of tools, materials, appliances and devices indicating as clearly as the facts herein shown that such instrumentalities were gathered together and kept in possession, handled by those whose business is such they are unwilling to be known by their own names in strange communities, justify juries in awarding convictions upon proper trials. It must not be understood from the foregoing enumeration of facts, that all of the facts above stated should in any given case be necessarily proved in order to warrant a conviction. We have only attempted to show what the jury was warranted in finding by the verdict. The evidence excites more than a mere suspicion.

The judgment is affirmed.