## GREEN v. DISTRICT OF COLUMBIA.

### No. 1226.

Municipal Court of Appeals
District of Columbia.
Argued Sept. 8, 1952.

Decided Oct. 14, 1952.

William S. Thompson, Washington, D. C., for appellant.

Edward A. Beard, Assistant Corp. Counsel, Washington, D. C., Vernon E. West, Corp. Counsel (Chester H. Gray, Principal Asst. Corp. Counsel, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD, and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was charged and convicted under a statute which defines as a vagrant "Any person upon whom shall be found any instrument, tool, or other implement for picking locks or pockets or that is usually employed or reasonably may be employed in the commission of any crime [and] who shall fail satisfactorily to account for the possession of the same." [1] In bringing this appeal he assigns several errors. We reach only one: the refusal of the trial court to grant a motion to suppress the evidence. Our decision on this question will dispose of the entire case.

The arresting officer testified that he had been assigned as a plain-clothes man to West Potomac Park as a result of a wave of thefts of automobile batteries and other accessories from unattended late model 1950 and 1951 cars which were parked along the roadways. On the afternoon of December 17, 1951, he observed appellant driving on Ohio Drive. Appellant passed a 1950 model car, which was parked and unattended, and drove on for about 35 or 40 feet, stopped, went into reverse, and parked abreast of it. He got out raised the hood of his car, and hastily looked at the surroundings. Appellant had his face "on a horizontal plane" with his head under the hood. The officer at this point, believing

1. Code 1951, § 22–3302(2).

himself observed, walked over to appellant. In answer to the officer's question as to what was wrong, appellant said that his car was overheating. The officer looked at the heating gauge and found it registered normal. The motor was running at the time. He also testified that he saw no steam coming from the radiator. On the front seat of appellant's car the officer observed a small iron crowbar, and on the floor in the back of the car he saw a burlap sack, three pairs of pliers, and two screw drivers. He asked appellant to account for the possession of these tools, and appellant replied that he kept the crowbar on his front seat "to get the starter out of a jam," and that he used the other tools to work on his car. Not being satisfied with appellant's explanations, he identified himself as a police officer and told appellant to follow him to the precinct, which he did, having no trouble starting his car.

■ The question is whether a misdemeanor was committed in the officer's presence so as to justify his making an arrest without a warrant. We must limit our view of the situation to the time the officer made the arrest. Only the evidence available to him at that time may be considered and anything that may have developed subsequent to the arrest must be disregarded. The misdemeanor charged in this case consisted of, first, the possession by appellant of any instrument, tool or other implement which is "usually employed or reasonably may be employed in the commission of any crime"; and, secondly, the appellant's failure to satisfactorily account for such possession.

■ The only tools here involved were a small crowbar, three pairs of pliers, and two screw drivers. In and of themselves they are certainly legitimate tools whose *usual* employment is not the commission of a crime. While we do not say that they could *never* be so used, we must consider

these items in the circumstances under which the officer saw them in appellant's automobile. These circumstances do not lead to the conclusion that they constituted such tools as are usually employed or reasonably may be employed in the commission of any crime. We note that it was testified that defendant had taken a course in mechanics and had worked as a mechanic's helper. We think that under these circumstances it can not seriously be questioned that the use of pliers and screw drivers to work on a car is anything but a satisfactory account for their possession.[2] The Government cites several cases in which similar tools have been held to fall within similar statutes making it unlawful to possess burglary tools. We have studied these cases, as well as others on this point,[3] and have found them distinguishable on the facts. In those cases there were present such things as dynamite fuses, brass knuckles, or firearms which, combined with other tools, were held to be sufficient under the statute involved.

The second portion of our statute requires the giving of a satisfactory explanation of such possession. The statement of proceeding and evidence states that the officer asked defendant to account for the possession of these tools. He said that he kept the small iron crowbar on his front seat "to get the starter out of a jam." He said he used the other tools to work on his car. Did this answer satisfactorily account for the possession of these tools? The claim that the crowbar was used to get the starter out of a jam may seem a little strange to the layman, but it was not shown by the prosecution that such use would not be made of a crowbar by a mechanic.

■ If we consider that defendant was placed under arrest because the officer assumed that a felony was about to be committed in that appellant was about to steal

2. Cf. Beail v. District of Columbia, D.C. Cir., —— F.2d ——, decided June 26, 1952, in which there was spelled out the reasonableness of "giving a satisfactory account" under another section of the same statute.

3. Cascio v. State, 213 Ark. 418, 210 S.W.2d 897; State v. Pulley, 216 S.C. 552, 59 S. E.2d 155; Prather v. State, 191 Ark. 903, 88 S.W.2d 851; State v. Vick, 213 N.C. 235, 195 S.E. 779; State v. Boliski, 156 Wis. 78, 145 N.W. 368, 50 L.R.A.,N.S., 825.

batteries or accessories from a car, the Government's case is even weaker. For under these circumstances the officer was obviously acting upon the mere suspicion that appellant (whom he had never seen before and of whom he had no knowledge of any past criminal record) was about to commit a felony because he happened to stop next to a car which was similar in make and model to those which had recently been burglarized. This would certainly be insufficient probable cause under the rule recently stated in Mills v. United States, D.C.Cir., 196 F.2d 600, 601 [4] in these words: "There is no question as to the governing principles of law. They have been clearly stated in United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The test is whether there was probable cause for the arrest. Were the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed? [Citing cases.] And the validity of the arrest and search must be determined by its reasonableness in the light of the circumstances of the particular case. Brinegar, 338 U.S. at page 176, 69 S.Ct. at page 1311; Rabinowitz, 339 U.S. at page 63, 70 S.Ct. at page 434."

In the Brinegar as well as the Carroll case the court in finding that there was probable cause relied almost exclusively on the fact that the officers had information gained as a result of their personal negotiations with the defendants on occasions prior to the arrest, and the fact that in both cases the officers knew at the time of the arrest that defendants were violators of the statute.

In the case before us there was no evidence of prior personal knowledge on the part of the police officer. On the contrary, it is conceded that the officer had never seen appellant before and knew nothing of his habits or employment. Nor was there any attempt to show that this defendant had personally been under any earlier suspicion in connection with the series of thefts then being watched by the police. Even had there been such evidence, its admissibility would seem to be doubtful under Beail v. District of Columbia, supra, which laid down the rule that one may not be convicted of vagrancy because of earlier transgressions of the statute. We think this defendant, like the defendant in the Beail case, at the time of his arrest "gave a legitimate reason, which has not been shown to be false" for the possession of the tools named.[5]

The Government contended in oral argument that appellant was not placed under arrest until he arrived at the police station. The record, however, does not support this contention; the statement of evidence recites that "On December 17, 1951, about 2:30 p. m., the defendant * * * was arrested by Park Policeman * * * at or near Ohio Drive and West Potomac Parkway."

Considered in the light of either of the above arguments, we must hold that this was an unlawful arrest, that the tools discovered in connection with the arrest could not properly be used in evidence against the defendant and that the motion to suppress should have been granted.

Reversed.

4. See also McQuaid v. United States, D.C. Cir., 198 F.2d 987; DeBruhl v. United States, D.C.Cir., 199 F.2d 175.

5. Two other instruments were found under the seat of defendant's automobile after he reached the police station. We think they, too, were improperly received. As in other cases of search and seizure, an illegal search "cannot be legalized by what it brings to light." Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690, 694. There the court, speaking through Judge Vinson (now Chief Justice of the Supreme Court) also said "Officers should not be encouraged to proceed in an irregular manner on the chance that all will end well."