**MAYNARD v. UNITED STATES.**

**MALLETTE v. UNITED STATES.**

Nos. 12084, 12085.

United States Court of Appeals District of Columbia Circuit.

Argued July 15, 1954.

Decided August 12, 1954.

Mr. Curtis P. Mitchell, Washington, D. C., for appellants. Mr. DeLong Harris, Washington, D. C., entered an appearance for appellant in No. 12084.

Mr. Samuel J. L'Hommedieu, Jr., Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis A. Carroll, Alfred Hantman, and Harold H. Greene, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, PRETTYMAN and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

The accused were jointly indicted, the first count charging the operation of a lottery in violation of Title 22, § 1501, D.C.Code 1951,[1] and the second count charging possession of certain slips

---

1. "If any person shall within the District keep, set up, or promote, or be concerned as owner, agent, or clerk, or in any other manner, in managing, carrying on, promoting, or advertising, directly, or indirectly, any policy lottery, policy shop, or any lottery, or shall sell or transfer any chance, right, or interest, tangible or intangible, in any policy lottery, or any lottery or shall sell or transfer any

or papers called numbers slips in violation of Title 22, § 1502, D.C.Code 1951.[2] Both were convicted and brought these appeals asserting various errors. The first involves denial of motions to suppress evidence, both accused having attacked the validity of the search warrant. Evidence in connection therewith was extensively heard and considered, both before and during the trial. The ruling of the District Court was correct in each instance. Brinegar v. United States, 1949, 338 U.S. 160, 175-176, 69 S.Ct. 1302, 93 L.Ed. 1879.

██ Next both accused charge error in the denial of their motions for severance, based on their claim that they were improperly joined as co-defendants. However, as to cases such as this Rule 8(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., authorizes joinder and Rule 14 authorizes severance, when the exercise of sound judicial discretion so requires. Stilson v. United States, 1919, 250 U.S. 583, 585, 40 S.Ct. 28, 63 L.Ed. 1154; Edwards v. United States, 10 Cir., 1953, 206 F.2d 855. We cannot say that the trial judge abused the discretion thus reposed in him.

Both accused urge that the District Court erred in failing to grant their motions for judgment of acquittal and in permitting the felony count of the indictment to be submitted to the jury, but after careful review and in light of our discussion to follow, we find no error in either particular.

The main argument presented to us involves alleged error in the trial judge's disposition of an inquiry submitted by the jury. An hour and a half after the jury took the case under advisement, the trial judge was asked: "Is possession of numbers material prima facie evidence of operating a lottery?" He replied as follows:

"In response to that, I will read to you again the last part of Section 1501, Title 22, of the Code, which is as follows: 'The possession of any copy or record of any such chance, right, or interest, or of any such ticket, certificate, bill, token, or other device shall be prima facie evidence that the possessor of such copy or record did, at the time and place of such possession, keep, set up, or promote, or was at such time and place concerned as owner, agent or clerk, or otherwise in managing, carrying on, promoting, or advertising a policy lottery, policy shop, or lottery.'"

Defense counsel noted an objection to the failure of the trial judge "to have explained to the jury what prima facie means, because in the opinion of counsel prima facie is a legal term and it is not

---

ticket, certificate, bill, token, or other device, purporting or intended to guarantee or assure to any person or entitle him to a chance of drawing or obtaining a prize to be drawn in any lottery, or in a game or device commonly known as policy lottery or policy or shall, for himself or another person, sell or transfer, or have in his possession for the purpose of sale or transfer, a chance or ticket in or share of a ticket in any lottery or any such bill, certificate, token, or other device, he shall be fined upon conviction of each said offense not more than $1,000 or be imprisoned not more than three years, or both. The possession of any copy or record of any such chance, right, or interest, or of any such ticket, certificate, bill, token, or other device shall be prima-facie evidence that the possessor of such copy or record did, at the time and place of such possession, keep, set up, or promote, or was at such time and place concerned as owner, agent, or clerk, or otherwise in managing, carrying on, promoting, or advertising a policy lottery, policy shop, or lottery."

2. "If any person shall within the District have in his possession, knowingly, any ticket, certificate, bill, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed for the purpose of playing, carrying on, or conducting any lottery, or the game or device commonly known as policy lottery or policy, he shall be fined upon conviction of each said offense not more than $500 or be imprisoned for not more than six months, or both." Not involved here was the amendment of June 29, 1953. See D.C.Code § 22-1502 (Supp. II 1951).

presumed that the jury understands the meaning of a legal term. . . . " The trial judge replied:

"Very well. In answer to Mr. Mitchell, they asked me if it was prima facie evidence of the operation of a lottery, and my answer was to read them [the statute] which says that it is. I can't assume that they are asking me a question that [when?] they didn't know what they were talking about."

The appellants in their brief tell us they make "no claim that the statutory language is not capable of the construction that the possession of numbers material is prima facie evidence of one of several instances of conduct, within the purview of the statute prohibiting lotteries." Even so they urge that "The court's use of the term 'prima facie' in answer to the jury's inquiry could only serve to confuse them and was not a proper judicial guide to the determination of those matters solely within their province."

There is no suggestion other than the claims of appellants that the jury failed to understand the meaning of the words "prima facie." Quite the contrary, it is clear that the jury's inquiry was intended to elicit the court's advice as to whether or not possession of numbers material was prima facie evidence of the *operation* of a lottery. Indeed, the transcript discloses that the trial judge, having completed his reading of the excerpt from the statute, asked: "Does that answer your question? Very well, you may retire."

 If the answer to the information sought by the jury had comprised the only reference to the subject matter and to the burden to be borne by the Government throughout the case as a whole, there would be some merit in the contentions of the appellants. However, the charge as a whole had fully instructed the jury and in terms which failed to call upon the accused to account for their possession of the contraband lottery slips. We can not believe that the jury was here confused or that the trial judge invaded their province. "Even in criminal cases it is held as a general rule that where the law governing a case is expressed in a statute the court in its charge should use the language of the statute." Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 1948, 165 F.2d 135, 140; Harrison v. State, 1938, 133 Neb. 794, 277 N.W. 96, 97; State v. Muldoon, 1929, 51 Nev. 322, 274 P. 922, 923. We deem the trial judge's answer in the language of the statute to have been appropriate and to have been understood as to its applicability within the framework of the entire charge.

Moreover, in the course of the charge, the trial judge had already instructed the jury that the possession of any copy or record of any chance (numbers slips) "shall be prima facie evidence that the possessor of such copy or record did, at the time and place of such possession, keep, set up, or promote, or was at such time and place concerned as owner, agent, or clerk, or otherwise in managing, carrying on, promoting, or advertising a policy lottery, policy shop, or lottery." No exception was taken to the charge thus given, although the trial judge and respective counsel at the bench carefully considered proposed instructions before the charge was delivered.

It is clear that appellants' attack is actually levelled against the language of the statute itself and the effect of its application. They quote from Ezzard v. United States, 8 Cir., 1925, 7 F.2d 808, 811: "But the writer is of opinion that a prima facie case is unknown in criminal procedure. In no condition of proof is it permissible to instruct a jury that it had become the duty of defendant to establish his innocence to obtain an acquittal." But the trial judge here delivered no such charge.[3]

---

3. Indeed the charge as given was scrupulous in its attention to the rights of the accused as a few excerpts will demonstrate:

"Now, you are instructed as a matter of law that a defendant is presumed to be innocent. He is not required to prove himself innocent or produce

Setting up or promoting a lottery is denounced by the Code as a felony. Possession of lottery or "numbers" slips is a misdemeanor. Two separate offenses are clearly defined. That there may be cases where an accused possesses numbers slips and yet does not "set up or promote" a lottery is self-evident. But there are also cases where, as here, the accused are charged with operation of a lottery in the course of which each possesses lottery slips. The appellants urge that the slips used as evidence to prove the "possession" charged in the second count may not also be used to ground the statutory inference permitted to be considered with respect to the first count. In the particular complained of, the Code § 22–1501,[4] says no more than that as part of the proof of *operation,* the Government shall be entitled to an inference in its favor that possession of numbers slips shall be prima facie evidence that the possessor "at the time and place of such possession" did carry on a lottery. Such possession like every other element in the case must be proved beyond a reasonable doubt. When Mallette was so shown to be a possessor of lottery slips in his lottery premises, as was testified by the arresting officers, and when Maynard seeking admittance to the rendezvous at that very time and place was so shown to be a "possessor" of numbers slips, such possession on the part of each of the accused was to be weighed by the jury, with all the other relevant testimony in the case, as it considered the matter of guilt on the first count. Contrary to the argument of the appellants, the inference permitted by the statute falls far short of an instruction "that it had become the duty of the defendant to establish his innocence to obtain an acquittal."

Mr. Justice Holmes said in Casey v. United States, 1928, 276 U.S. 413, 418, 48 S.Ct. 373, 374, 72 L.Ed. 632, "The statute here talks of prima facie evidence, but it means only that the burden shall be upon the party found in possession to explain and justify it when accused of the crime that the statute creates. 4 Wigmore, Evidence, § 2494. It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the Government. 4 Wigmore, Evidence, § 2486." And see Cavness v. United States, 9 Cir., 1951, 187 F.2d 719, 722, certiorari denied, 1951, 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374:

"The statute under which Appellant was indicted and convicted provides that 'the absence of appropriate tax-paid stamps from * * *

evidence at all on that subject. In considering the testimony, you must consider it in the light of this presumption in which the law clothes a defendant. It is a presumption that abides with him throughout the trial of the case until the evidence convinces each juror of his guilt beyond a reasonable doubt."

The charge went on:

"You are instructed that in criminal cases the entire burden of proof is upon the Government from the beginning to the end of the trial. This burden of proof never shifts from the Government to a defendant, and the defendant, is not bound to explain anything, and his failure to explain anything connected with the case cannot be considered by you as a circumstance tending to prove guilt."

Again:

"A defendant in a criminal case under our law has the option of whether or not he shall take the witness stand. He has the privilege of taking the witness stand if he chooses to do so. He is under no obligation to testify if he chooses not to do so. The law is that the jury must not draw any unfavorable inference against the defendants from the fact that they failed to take the witness stand."

Then, at the specific request of defense counsel, the trial judge added:

"Ladies and gentlemen of the jury, I think that I made it clear to you but if I didn't I want to be fair and do it. You are instructed, of course, that each and every element of the charges against these defendants must be proved beyond a reasonable doubt."

4. See note 1, supra.

[cocaine] shall be prima facie evidence of a violation of this subsection by the person in whose possession' such drug is found. 53 Stat. 271 (1939), as amended, 26 U.S.C.A. § 2553(a). The burden of proof is thus placed upon an accused to show lawful possession. Casey v. United States, 1928, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632. The record does not reveal that appellant made any effort to meet that burden."

Cases in which we have sustained convictions under the sections of the Code here involved are so numerous that no point will be served in citing them. In reinforcing our views as to the point here involved, it is sufficient for us to say that we deem the issue settled by Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 472, 69 L.Ed. 904. There, 268 U.S. at pages 184 and 185, 45 S.Ct. at page 472, Mr. Justice Sutherland writing for a unanimous court said:

"Every accused person, of course, enters upon his trial clothed with the presumption of innocence. But that presumption may be overcome, not only by direct proof, but, in many cases, when the facts standing alone are not enough, by the additional weight of a countervailing legislative presumption. If the effect of the legislative act is to give to the facts from which the presumption is drawn an artificial value to some extent, it is no more than happens in respect of a great variety of presumptions not resting upon statute. See Dunlop v. United States, 165 U.S. 486, 502–503 [17 S.Ct. 375, 41 L.Ed. 799]; Wilson v. United States, 162 U.S. 613, 619 [16 S.Ct. 895, 40 L.Ed. 1090]. In the Wilson case the accused, charged with murder, was found, soon after the homicide, in possession of property that had belonged to the dead man. This Court upheld a charge of the trial court to the effect that such possession required the accused to account for it, to show that as far as he was concerned the possession was innocent and honest, and that if not so accounted for it became 'the foundation for a presumption of guilt against the defendant.'

"The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article *prima facie* evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption and a *prima facie* case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution."

It is clear to us that the inference permitted by the statute in nowise impinged upon the over-all requirement as the trial judge charged, that the jury must find, on the whole case, that every element of the offense had been established beyond a reasonable doubt. It was within the province of the jury to take into account the permitted inference as it considered its verdict.

Not stressed in argument were various other factors which were before the jury: police recognition of known and previously convicted numbers players, the sound of coins being poured out on to a table by successive visitors, the operation of

an adding machine, the attempt by certain visitors to leave when police entered the apartment, tally sheets with records of plays, special record books for making numbers entries, Maynard's statements to police that an unknown person had given him numbers slips and money to be delivered as a favor to another unknown person who would be driving a truck on a certain street, the building manager who testified to renting the apartment to Mallette, police testimony as to the manner of operation of the "numbers game," and other details we need not supply. The whole case proceeded upon a much broader ground than, as appellants claim, that of conviction achieved by building inference upon inference.[5]

That Mallette maintained a lottery establishment and also possessed lottery paraphernalia seems proved beyond peradventure. Wyche v. United States, 1951, 90 U.S.App.D.C. 67, 193 F.2d 703, certiorari denied, 1952, 342 U.S. 943, 72 S.Ct. 556, 96 L.Ed. 702. It was equally reasonable for the jury to find that he was aided and abetted by Maynard who also brought to Mallette's apartment the many numbers slips found in his personal possession. See D.C.Code § 22–105 (1951) and Gilbert v. United States, 1954, 94 U.S.App.D.C. ——, 215 F.2d 334. No prejudicial error affecting substantial rights has been disclosed.

Affirmed.

5. Arrested at the same time and place were one Brown and one Lyles, both of whom were also convicted. Lyles did not appeal. We affirmed the conviction of Brown. Brown v. United States, 1954, 93 U.S.App.D.C. 379, 212 F.2d 809.