**Allen BENTON, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 12728.**

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 18, 1955.

Decided March 1, 1956.

Mr. Charles R. Cutler, Washington, D. C., appointed by this Court, with whom Mr. Herbert J. Miller, Jr., Washington, D. C., was on the brief, for appellant.

Mr. John D. Lane, Asst. U. S. Atty., for appellee.

Messrs. Leo A. Rover, U. S. Atty., Lewis Carroll and Frederick G. Smithson, Asst. U. S. Attys., were on the brief for appellee.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

Housebreaking and larceny charges in this indictment against appellant were dismissed before trial on the Government's motion. But appellant was convicted on the remaining charge of possessing implements which "reasonably may be employed in the commission of any crime" under D.C.Code, § 22–3601 (Supp.1954). That section provides:

"No person shall have in his possession in the District any instrument, tool, or other implement for picking locks or pockets, or that is usually employed, or reasonably may be employed in the commission of any crime, if he is unable satisfactorily to account for the possession of the implement. Whoever violates this section shall be imprisoned for not more than one year and may be fined not more than $1,000, unless the violation occurs after he has been convicted in the District of a violation of this section or of a felony, either in the District or in another jurisdiction, in which case he shall be imprisoned for not less than one nor more than ten years." [1]

These are the pertinent facts concerning this appealed conviction. An unidentified woman informer, who was a narcotics addict under arrest, told the police that appellant carried two guns, had a bag of burglar tools in the trunk of his car, and had threatened to kill the first policeman who looked in his car; that he gave her some narcotics bearing the label of a pharmacy which she and he had previously "cased"; and that he was presently in his girl friend's apartment. He was apprehended in the hallway of the apartment by the police who had no search or arrest warrant.

The police thereupon broke down the apartment door, and conducted a search which netted a knotted rope, some costume jewelry and a loaded revolver. Appellant was then taken to his car on the street outside the apartment. Inside the trunk of the car the police found a bag containing a sledge hammer, an axe, two wrecking bars, a hacksaw with several blades, a length of knotted rope, a brace and bit. It is these tools which constitute the basis for the charge under review.

According to police officers, Benton admitted at police headquarters that the tools were his; when asked to explain why he had them, he answered, "What do you think"; and when asked what he was using them for, he answered, "You know what they are used for."

Appellant urges that his conviction should be reversed on the ground

1. 67 Stat. 97 (1953).

that the statute is unconstitutional. It is familiar doctrine that a constitutional issue should be reached only where it is essential for decision. We followed this principle in Beail v. District of Columbia, 1951, 91 U.S.App.D.C. 110, 201 F.2d 176, 177, where the constitutionality of § 22–3302(8) (1951), a subsection of the vagrancy statute, was attacked in seeking reversal of a conviction thereunder. A vagrant is there defined as "Any person who wanders about the streets at late or unusual hours of the night without any visible or lawful business and *not giving a good account of himself.*" (Emphasis supplied.) We found in Beail that the police asked "casual or bantering" questions of the accused and did not follow up by an "order or demand" to give a " 'good account of herself' ". Construing the statute to require such "order or demand", we reversed and ordered acquittal.

■ But the constitutional issue cannot be avoided in like manner here. For even assuming, without deciding, that the challenged statute requires a similar "order or demand",[2] we think this requirement was satisfied. The police asked appellant to "account" in circumstances which made clear that he knew a straight and serious answer was required. He was questioned in police headquarters after he had been taken into custody because he was found in possession of the implements. Moreover

the questions themselves, far from being "casual or bantering", appear to have been direct and serious.[3] Appellant could hardly have understood them differently.

We turn then to the constitutional attack we must consider. Appellant's contention, which rests on the premise that criminal intent is an essential element of the crime proscribed by § 3601, is this: the statute, instead of expressly requiring proof that possession is with criminal intent, allows such intent to be inferred from the possession of implements that "reasonably may be employed in the commission of any crime"; since almost any implement in one's possession for legitimate use may "reasonably be [so] employed," the presumption of intent which flows from proof of possession is an irrational and therefore invalid one. We agree.

■ Appellant is correct in his premise that proof of intent is an essential element of the Government's case under § 3601.[4] Similar language in an earlier statute, which defined the forbidden possession of implements as "vagrancy,"[5] has been construed, on a motion to suppress evidence, to require a showing of the "circumstances" surrounding possession where the implements themselves do not give rise to sinister inferences, as do dynamite fuses or brass knuckles. Green v. District of Columbia, D.C.Mun.

2. In this connection we merely note the following. Under our view, the crime defined in Beail differs from that proscribed by § 3601. Vagrancy is a crime of "personal condition" or "status." Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv.L.Rev. 1203 (1953); Note, Use of Vagrancy-Type Laws for Arrest and Detention of Suspicious Persons, 59 Yale L.J. 1351 (1950). One may give a good account of himself by disclosing, for example, that he is a bank president. But he cannot do so by stating that he does not intend to be a vagrant, since that element is irrelevant to the question of whether he is, in fact, a vagrant. In contrast, § 3601, as we show infra, must be read to require proof of intent as an essential element of the crime, and the "satisfac-

torily to account" clause must be read as relating to that intent.

3. In Beail, the alleged vagrant was accosted on the street prior to arrest. The exchange with the police appeared to be exploratory; it certainly was not characterized by any degree of formality. There was no indication, absent an order or demand, that the defendant would realize the significance her responses might have or that straight and serious answers were required.

4. See Morissette v. United States, 1952, 342 U.S. 246, 72 S.Ct. 240, 246, 96 L. Ed. 288, excepting only a limited category of " 'public welfare offenses' " from the traditional requirement.

5. D.C.Code, § 22–3302(2) (1951).

App.1952, 91 A.2d 712, 714. Implicit in Green is the view that, in cases involving tools having legitimate purposes, the circumstances are relevant to show whether the defendant intended to use them to commit a crime; in cases involving tools of sinister import, intent may be inferred from the tools themselves. In either case, criminal intent is essential. In conformity with this view, the requirement of intent, or circumstances evincing intent to use tools for a felonious purpose, has been made a part of comparable "burglar tool" statutes existing in various states, either by express incorporation[6] or judicial construction.[7]

The issue here is whether Congress has, consistently with the due process clause, made intent an element of the crime the statute defines. According to the literal language of § 3601, once the Government demonstrates that a questioned implement is one which "reasonably may be employed in the commission of any crime," the defendant is guilty unless he is able "satisfactorily to account for the possession of the implement." The meaning of the exculpatory clause is not clear. It would hardly make sense to say that one could account satisfactorily by showing that he bought the tools in a hardware store, or that he is a carpenter by trade if, in addition, he intends to use them to commit a burglary. In the context of the statute then, the only reasonable interpretation of the clause is that it relates to intent and obligates the defendant to show that the implements are not in his possession for a criminal purpose. By thus casting upon the defendant the burden of proving the absence of criminal intent, the statute presumes its existence from the mere fact of possession of the articles described.

■ The validity of a presumption created by statute depends on the presence of a "rational connection between the fact proved and the ultimate fact presumed * * *." Tot v. United States, 1943, 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519. It cannot be sustained "if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience." Ibid. Applying this test in Tot, the Supreme Court invalidated a statute providing that mere possession of a firearm or ammunition by a person previously convicted of a crime of violence is "presumptive evidence" of its shipment or receipt in interstate commerce.[8] The necessary connection which the Court found lacking in Tot between the fact presumed and the fact proved is similarly lacking here.

■ No rational inference of criminal intent can be drawn from the mere possession of tools which "reasonably may be employed" in crime. Such a definition encompasses a wide variety of implements, possession of which does not in itself give rise to sinister impli-

6. E. g., Cal.Pen.Code, § 466 (West's Ann. Pen.Code; Deering 1949); Idaho Code, tit. 18, § 1406 (1948); Ill.Ann.Stat. c. 38, § 87 (Smith-Hurd Ann.); Ky.Rev. Stat. § 433.120 (1953); Mass.Ann.Laws, c. 266, § 49 (1933); Mich.Stat.Ann. § 28.311 (1938), Comp.Laws 1948 § 750.-116; N.M.Stat.Ann. c. 40, § 9–8 (1953); N.Y.Pen.Code, McKinney's Consol.Laws, c. 40, § 408 (1944); N.Dak.Rev.Code, § 12–3503 (1943); Ohio Rev.Code, § 2907.11 (1953); Pa.Stat.Ann. tit. 18, § 4904 (Purdon 1945); Tenn.Code Ann. § 39–909 (1955); Wyo.Comp.Stat. c. 9, § 312 (1945).

7. State v. Hefflin, 1935, 338 Mo. 236, 247–49, 89 S.W.2d 938, 945–946, 103 A.L.R.

1301 and cases cited in note 1; State v. Lorts, Mo.1954, 269 S.W.2d 88, 91. Compare Prather v. State, 1936, 191 Ark. 903, 88 S.W.2d 851; Cascio v. State, 1948, 213 Ark. 418, 210 S.W.2d 897.

8. See also Morrison v. California, 1934, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664, holding unconstitutional a statute casting upon a defendant alleged to be an alien the burden of proving citizenship once the State proved he was occupying or using agricultural land. The Court said in 291 U.S. at page 90, 54 S.Ct. at page 285: "Possession of agricultural land by one not shown to be ineligible for citizenship is an act that carries with it not even a hint of criminality."

cations. In contrast, such implications properly arise from articles like opium or lottery tickets which experience teaches are generally held for illicit purposes.[9] Though the sledge hammer, axe, and hacksaw which appellant had, quite clearly can be used criminally, they also may be, and for the most part are, used for legitimate purposes. Since the mere fact of possession of such implements has no relevance to guilt, it may not be made "the occasion of casting on the defendant the obligation of exculpation." [10]

We think this conclusion is sound whether the statute is construed as shifting the burden of proof or only the burden of going forward with the evidence. On either theory, the defendant's guilt is established if the Government, offering no evidence on intent, rests its case on proof of possession, and the defendant fails to counteract the presumption of felonious intent arising therefrom.

Since the jury was instructed only in terms of the statutory language, which improperly places the burden of proof with respect to intent on the defendant, it follows that the conviction must be reversed.

The remaining question is whether a new trial should be ordered. We would be justified in remanding for that purpose only if the statute can be saved by construing it to impose on the Government the burden of showing that possession of the tools described was for an illicit purpose. But it seems clear, from the "satisfactorily to account" clause, that Congress meant to place the burden of proof with respect to intent on the defendant. We cannot strain construction of the statute so far as to avoid that conclusion. It follows, in our opinion, that the statute as applied here is unconstitutional. This makes a new trial unnecessary.

We need not decide whether the "reasonably may be employed" phrase with which we are concerned, or any other phrase in the statute, could validly be applied to tools or implements which in themselves give rise to sinister inferences.[11]

Reversed.

WILBUR K. MILLER, Circuit Judge (dissenting).

My view that the majority err in holding the statute unconstitutional is sustained by Maynard v. United States, 1954, 94 U.S.App.D.C. 347, 215 F.2d 336, and the numerous cases there collected. The appellant interposed no defense. His guilt was clearly shown. I think we should affirm the conviction.

---

9. Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Maynard v. United States, 1954, 94 U.S.App. D.C. 347, 215 F.2d 336. Accord, Morrison v. California, 291 U.S. at page 90, 54 S.Ct. 281.

10. Tot v. United States, 319 U.S. at page 469, 63 S.Ct. at page 1246.

