James M. MATHIS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 1875.

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 3, 1956.

Decided Jan. 24, 1957.

William B. Bryant, Washington, D. C.,
for appellant.

Harold H. Greene, Asst. U. S. Atty.,
with whom Oliver Gasch, U. S. Atty., Lewis
Carroll and David Kindleberger, Asst. U.
S. Attys., Washington, D. C., were on the
brief, for appellee.

Before ROVER, Chief Judge, and HOOD
and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant was convicted by the court,
sitting without a jury, of violating the
statute prohibiting the possession of tickets
and other paraphernalia designed for the
purpose of conducting a lottery.[1] On appeal
his sole contention is that the trial judge
erred in not granting a motion to suppress
evidence obtained from his person and also
from his locker as the result of a search
incident to his arrest. Appellant challenges
the legality of his arrest, claiming that it
was made without probable cause; he argues
that if it was illegal, any search incident
thereto was also illegal, and the evidence
thus acquired should have been suppressed.

The facts briefly are these: Defendant
was employed as a junior cook in a cafeteria
operated by General Services Incorporated.
The G.S.I. security officer, who made the
arrest, testified that the manager of the
cafeteria told him

"* * * she was suspicious of the
defendant here taking those articles
from the cafeteria. Said that she no-
ticed that he had put up a brown tin
can in a certain part of the cafeteria,
she did not tell me where, and presumed
that it had some kind of goods belong-
ing to the G.S.I. in it.

* * * * * *

"She told me that this defendant
comes out of the cafeteria,—it was
about three o'clock—and she was under
the impression that he would be car-
rying this can."

1. Code 1951, 22–1502 (Supp. IV).

He subsequently stationed himself outside the door, and when defendant emerged carrying the can, the officer arrested him although he did not know what was in the can at that time. He then discovered that it contained liver scraps and obtained a signed statement to the effect that defendant was taking them home to his dog. When informed of this, the cafeteria officials decided not to prosecute defendant for petit larceny. The officer then testified:

"So, I, then I asked him, requested him to see his wallet and everything he had in his pocket, and also wanted to get his passes, the building passes that he had in his wallet.

"He handed us his wallet and we went over his wallet and we, we examined the contents and we come across two cut card numbers that we have in evidence."

Defendant was given the privilege of resigning or being dismissed and chose the former. A search was then made of his locker and numbers slips were found. The manager of the cafeteria did not testify, nor was there evidence introduced to establish any facts upon which she based her suspicion or impression that defendant was in fact removing food from the cafeteria.

 It is elementary that a search incident to an arrest, and evidence obtained as a result of such search, cannot be justified if the arrest is illegal. The test of the legality of an arrest is probable cause. The rule relating to probable cause is by no means new; often stated,

"* * * it has come to mean more than bare suspicion: [It] exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable

caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed 543 [555], 39 A.L.R. 790." [2]

The question as to what circumstances constitute probable cause cannot be determined by any fixed formula, but must be resolved on the facts of each individual case.[3]

 We are therefore confronted with the question of whether the knowledge of the officer warranted a reasonable belief that an offense was being committed or whether he acted on mere suspicion. We think that the instant circumstances could create nothing more than suspicion. The informant is quoted as stating only that she was suspicious of defendant; no facts were adduced to show the basis for her suspicion. The government argues that her suspicion was generated by her observation that defendant had placed a tin can in a certain section of the cafeteria and she presumed it contained cafeteria goods. But the government has not indicated why a mere placing would necessarily be a step in a criminal act; indeed, without any other facts (which are certainly not in this record), the act of placing a tin can in the cafeteria seems quite ordinary. Again, no facts were in evidence to show the basis for the cafeteria manager's suspicion that the can contained stolen goods.

The government claims to find considerably more than mere suspicion in the fact that the cafeteria manager told the officer that defendant would leave the cafeteria at a certain time, by a particular exit, and carrying the can; and that the officer observed defendant doing just that. Yet there is certainly nothing unusual in an employee leaving his place of employment at a certain hour and by a particular door.

2. Brinegar v. United States, 1949, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879. See also Green v. District of Columbia, D.C.Mun.App.1952, 91 A. 2d 712.

3. United States v. Rabinowitz, 1950, 339 U.S. 56, 63, 70 S.Ct. 430, 94 L.Ed. 653.

**180**

Nor could his possession of the described can lead to the conclusion that a criminal act was being committed, especially when the officer still did not have anything more than a suspicion or a presumption that the can contained stolen goods. The government cites Browner v. United States, 6 Cir., 1954, 215 F.2d 753, in support of its argument on this point. We have considered this case and regard it as distinguishable on its facts.

We hold therefore that the evidence in question should have been suppressed because it was seized in the course of a search pursuant to an arrest which was illegal because made without probable cause.

Reversed.