**UNITED STATES of America**

v.

**Frank MALFI, Appellant.**

**No. 12623.**

United States Court of Appeals
Third Circuit.

Argued Oct. 24, 1958.

Decided March 4, 1959.

Rehearing Denied May 12, 1959.

148

M. Gene Haeberle, Camden, N. J. (Jacob Kossman, Philadelphia, Pa., on the brief), for appellant.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Following a jury trial, defendant-appellant Frank Malfi and James Santore were found guilty of violations of the narcotic [1] and conspiracy laws.[2]

Malfi prosecutes this appeal from the District Court's judgment of conviction, entered following its denial of his motion for judgment of acquittal or for a new trial, on these grounds: there was insufficient evidence to sustain the jury's verdict as to Counts 1 and 3 of the indictment, and fundamental error by reason of inadequate instructions to the jury with respect to the offenses charged in Counts 2 and 4. The conspiracy conviction in Count 5 is not challenged.[3]

The five-count indictment related to illegal sales of substantial quantities of heroin allegedly made by Malfi and Santore in Washington Township, New Jersey, on July 25 and August 22, 1957.

Viewing the evidence in the light most favorable to the Government, as the jury's verdict requires, the facts are as follows:

Federal narcotic agents Picini and Marshall met Santore in Philadelphia, Pennsylvania, on July 18, 1957, subsequent to previous negotiations and conversations; at that time Santore told the agents he had made arrangements for them to meet "his connection" and asked for and received $300.00; on July 23, the agents met Santore and Malfi and discussed terms for the purchase of uncut heroin; at that time Malfi said that "he had made arrangements with his connection, and had been advised that

1. 21 U.S.C.A. § 174 (1952) and 26 U.S.C. § 4705(a) (1952 Supp. V).

2. 18 U.S.C. § 371 (1952).

3. Malfi was sentenced to serve 15 years on each of the four counts charging violation of the narcotic laws and 5 years on the conspiracy counts, all of the sentences to run concurrently.

he could obtain uncut heroin" provided "the money would have to be paid in advance"; on July 24 the agents met Malfi and Santore and paid him $3,000.00 in advance for half a kilo of heroin which was to be delivered by Santore at the King Cole Motel near Williamstown, New Jersey; on July 25 Santore delivered 10 ounces 6½ grains of heroin to the agents at the King Cole Motel, receiving an additional $200.00 at the time; on July 29 Santore, in the presence of Malfi, advised the agents that he had delivered more than he thought and later that day the agents paid Malfi an additional $750.00—the agreed price; on August 5 and again on August 13 the agents met Malfi and Santore in Philadelphia and negotiated the purchase of another half a kilo of heroin for $5,100.00 to be paid to Malfi and $600.00 to Santore; $3,100 was paid on account by Picini to Malfi at the August 13 meeting; on August 21 the agents went to Malfi's home and complained to him about the failure to deliver the heroin and were told by him that the $3,100.00 "was already in the hands of the connection, that he was going up that night to make sure that the heroin would be delivered either late that night or the next day" and that "as soon as he got the heroin he would deliver it to Santore, and Santore would deliver it to us, and said for us to remain at the motel, and Santore would contact us there"; on the morning of August 22 Santore delivered to the agents at the motel 17 ounces, 153 grains of heroin and was paid $2,250.00; four days later the agents paid Santore an additional $300.00; no written order for the heroin was ever given by the agents to Malfi or Santore; Malfi was not in New Jersey when the deliveries of the heroin took place and his fingerprints were not found on the packages delivered.

Malfi moved for acquittal at the close of the Government's case, and, when his motion was denied, rested.

In Count 1 Malfi and Santore were charged with the sale made on July 25, 1957, and in Count 3 with the sale on August 22, 1957, in violation of 21 U.S.C.A. § 174; Counts 2 and 4 charge them with making the respective sales in violation of 26 U.S.C. § 4705(a).

Title 21 U.S.C.A. § 174 provides in applicable part:

"Whoever fraudulently or knowingly imports * * * any narcotic drug into the United States * * * contrary to law, or * * * sells, or in any manner facilitates the transportation * * * or sale of any such narcotic drug after being imported * * * knowing the same to have been imported * * * contrary to law, or conspires to commit any of such acts * * * shall be imprisoned * * * and * * * may be fined * * *.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

Title 26 U.S.C. § 4705(a) provides:

"It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate."

With respect to Counts 1 and 3, Malfi contends that the evidence is insufficient to sustain the judgment, there was not "direct" evidence he says that he knew the narcotics had been illegally imported or that he ever had physical possession of the heroin sold, and, consequently, the presumption of illegal importation did not come into play, so that he committed no offense under 21 U.S.C.A. § 174.

As to Counts 2 and 4, says Malfi, in the absence of evidence that he was in New Jersey in connection with the illegal sales he could not have been con-

victed in the District of New Jersey except under the provisions of 18 U.S.C. § 2 (1952), which makes aiders and abettors principals, and since "that statute constituted his only link to the substantive offense alleged" in these counts it was essential that the scope of this statute "be clearly and fully explained to the jury but this was not done"; the trial judge "simply read" the statute. The failure to explain the scope of the statute, Malfi contends, constituted fundamental error requiring reversal even though there was no objection or request for amplication of the instruction to the jury.

█ Taking first Malfi's contentions with respect to Counts 1 and 3:

Applicable to these contentions is this well-settled rule:

"The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680.

█ Upon review of the record we are of the opinion that the testimony earlier summarized discloses that there was ample basis for the jury's finding of "possession" on Malfi's part. With respect to the sale on July 25 it was testified by the agents that at their conference with Malfi on July 23 when they discussed terms for the sale of the heroin, Malfi said "he had made arrangements with his connection, and had been advised that *he could obtain* uncut heroin" provided "the money would have to be paid in advance"; following the payment in advance on July 24, Santore the next day delivered the heroin.

In connection with the August 22 sale, the evidence disclosed that arrangements as to it were made by the agents directly with Malfi and he was paid $3,000 in advance on August 13; when the agents on August 21 complained to Malfi about the delay in delivery he said "he was going up that night to make sure the heroin would be delivered either late that night or the next day" and that "as soon as *he got the heroin* he would deliver it to Santore, and Santore would deliver it" in New Jersey; that the heroin was delivered in accordance with Malfi's commitment on August 22.

At the minimum the testimony recited established that Malfi had in his "control or dominion" the heroin sold on July 25 and August 22 and it is well settled that "possession of a thing means having it in one's control or under one's dominion". Brown v. United States, 9 Cir., 1955, 222 F.2d 293, 297.

█ Although we view the testimony as affording sufficient "direct" proof of possession, it is established, although Malfi contends to the contrary, that such proof need not be "direct" in order to raise the statutory presumption of § 174. Thus, in United States v. Pisano, 7 Cir., 1951, 193 F.2d 355, at page 360, 31 A.L.R.2d 409, it was said:

"As we understand defendants' contention, they insist that the government must offer direct proof of possession of the drug in order to raise the statutory presumption. We know of no reason why the evidence must be direct. It must be convincing, of course, but when it is clear that no narcotics were received by anybody until shortly after the defendants were present and had been dealt with, the question becomes one of fact for the jury."

In United States v. Pinna, 7 Cir., 1956, 229 F.2d 216, at page 218, where it was contended that "direct" proof of possession is essential in order to give rise to presumption of unlawful importation, it was stated:

"We know of no reason, however, why possession proven by circumstantial evidence should be treated any differently from possession proven by direct evidence." [4]

4. See also United States v. LaRocca, 2 Cir., 1955, 224 F.2d 859 and United States v. Maroy, 7 Cir., 1957, 248 F. 2d 663, 666, certiorari denied 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414.

■ Even though the testimony in the instant case should be regarded as lacking in "direct" proof of possession, the presence of circumstantial evidence here is nigh overwhelming.

For the reasons stated Malfi's contentions with respect to Counts 1 and 3 must be rejected.

We find without merit Malfi's contentions with respect to Counts 2 and 4 which are premised on his view that the trial judge committed fundamental error when he "simply read" to the jury the provisions of 18 U.S.C. § 2, making aiders and abettors principals, without "explaining and expounding" their provisions.

■ As previously noted, Malfi did not object nor ask for explanation or clarification of the instructions given and accordingly reversal is justified only if the failure to instruct constitutes "a basic and highly prejudicial error." United States v. Levy, 3 Cir., 1946, 153 F.2d 995, 998.

■ It is true, as we held in United States v. Gordon, 3 Cir., 1957, 242 F.2d 122, 126, certiorari denied 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed.2d 1436, that if an instruction fails to define the offense charged, reversal is required. But we there made it clear that where an instruction describes an offense "in proper statutory language" and the "primary law" was read "We must assume that the jury was one of average intelligence, and after sitting through five days of trial, knew very well what was meant by the simple statutory words used to describe the offense * * * and the instructions neither confused nor misled them."

What was said in United States v. Gordon controls in the instant situation.

Here the evidence was overwhelming that Malfi was an active participant—indeed the principal actor—in the July 25 and August 22 sales.

■ With respect to these sales, which took place in New Jersey when the narcotics were delivered by Santore to the Government agents pursuant to the arrangements completed with Malfi, the jury was fully justified in finding Malfi to be a "principal" under 18 U.S.C. § 2.

The statute provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

The provisions of the statute are simple and self-explanatory.

Moreover, it must be noted that the trial judge prefaced his reading of the statute with this statement:

"Congress has, likewise, seen fit, as is its power, to prescribe the status of those alleged to have been *associated with others in the commission of crime* in the following language * * *." (Emphasis supplied.)

The term "associated with others in the commission of crime" is certainly layman's language for the statutory terms "aids, abets, counsels, commands, induces or procures" and no clearer exposition could possibly have been made. Indeed, in Nye & Nissen v. United States, 1949, 336 U.S. 613, at page 619, 69 S.Ct. 766, 769, 93 L.Ed. 919, where the Court approved an instruction by the trial court that one "who aids, abets, counsels, commands, induces, or procures the commission of an act is as responsible for that act as if he committed it directly" it was stated:

"In order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort *associate himself with the venture*, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.' L. Hand, J., in United States v. Peoni, 2 Cir., 100 F.2d 401, 402". (Emphasis supplied.)

To the same effect see Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435, where the Court approved a similar instruction and cited with approval Nye & Nissen v. United States, supra.

What was said in Wheeler v. United States, 1951, 89 U.S.App.D.C. 143, 190 F.2d 663, is particularly pertinent here. There the defendant contended that the trial court failed to adequately instruct the jury on the elements of the crime of impersonating an officer. With respect to that contention the Court said:

> "* * * The trial court read § 22–1306 of the D.C.Code (1940) to the jury as part of the instructions. This was sufficient. The language of this statute is clear and concise; it contains no words which are obscure, ambiguous or which are used in some restricted, special, or technical sense which the average layman cannot be expected to understand."

Again, in United States v. Maroy, 7 Cir., 1957, 248 F.2d 663, 666, certiorari denied 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed. 2d 414, it was held that there was "no merit in defendant's objection" to an instruction which "simply quoted the aiding and abetting statute *ad verbatim.*" [5]

■ For the reasons stated we are of the opinion that Malfi's contentions with respect to Counts 2 and 4 must be rejected.

■ This might be added with reference to Counts 2 and 4. In his brief Malfi stated that "On familiar principles [citing cases] it would appear that there was a contract to sell in Pennsylvania and a sale in New Jersey", thus conceding venue in New Jersey. Moreover, in a note to the foregoing quotation Malfi said that if he were in error on this point "and the sale without a written order is deemed to have taken place in Pennsylvania, then, very plainly, venue was wrongly laid in New Jersey." The

latter proposition is utterly without merit.

It is specifically provided in 18 U.S. C. § 3237 that "* * * any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

For the reasons stated the judgments of conviction will be affirmed.

---

5. See also Maynard v. United States, 1954, 94 U.S.App.D.C. 347, 215 F.2d 336, 339

where an instruction in the words of the statute was approved.