Charles DeWitt DAVIS, Appellant
v.
UNITED STATES of America,
Appellee.

Morris A. LEWIS, Appellant
v.
UNITED STATES of America,
Appellee.

Robert H. ELLIS, Appellant
v.
UNITED STATES of America,
Appellee.

Charles E. BERRY, Appellant
v.
UNITED STATES of America,
Appellee.

Nos. 15020, 15021, 15170, 15171.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 13, 1959.

Decided Dec. 14, 1959.

Petitions for Rehearing Denied
Jan. 8, 1960.

Mr. James C. Toomey, Washington, D.
C., was on the brief for appellant in No.
15020.

Mr. Harry J. Ahern, Washington, D.
C., for appellant in No. 15021.

Mr. Henry Lincoln Johnson, Jr., Washington, D. C., for appellant in No. 15170.

Mr. William B. Bryant, Washington,
D. C., with whom Messrs. William C.
Gardner and Joseph C. Waddy, Washington, D. C., were on the brief, for appellant in No. 15171.

Mr. Frank Q. Nebeker, Asst. U. S.
Atty., with whom Messrs. Oliver Gasch,

U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before PRETTYMAN, Chief Judge, and EDGERTON and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

These consolidated appeals are from convictions in a joint trial by jury on a four-count indictment specifying violations of the gambling laws. Count I charged all four appellants, along with certain others, with promoting a lottery known as the numbers game.[1] Count II charged the four and one other, with knowing possession of records, slips and tickets, etc., used in the numbers game.[2] Counts III and IV, which named only appellant Lewis, a former member of the Metropolitan Police Department, charged him with knowingly maintaining gambling premises[3] and with neglecting to make an arrest for violations of the gambling laws committed in his presence.

Before submitting the case to the jury, the trial judge directed a verdict of acquittal with respect to appellants Ellis and Berry on Count II. The jury found them guilty on Count I. It also found Davis guilty on Counts I and II, and Lewis guilty on all four counts.

In appeal No. 15021, Lewis complains of the admission of certain damaging evidence against him on the ground that it was obtained by the police in the illegal execution of a search warrant. He charges that the police broke in the door of his premises without giving notice of their purpose and authority as required by 18 U.S.C. § 3109 (1958).[4] While there was some conflict in the evidence upon the question, we cannot say from the record before us that the trial judge erred in finding that sufficient no-

tice was given. Lewis' convictions must therefore stand.

In appeal No. 15020, Davis makes the same attack upon the execution of the search warrant. In addition he complains against the admission of an accusatory statement made by Lewis against the other defendants. The trial judge later instructed the jury to disregard the statement. We find no error, and affirm Davis' convictions.

In appeals Nos. 15170 and 15171, Ellis and Berry, respectively, rely on the same alleged errors concerning the search and the accusatory statement. But they also raise another point, namely, that the trial judge's charge to the jury on Count I is fatally inconsistent with his direction of acquittal on Count II. The contention requires some discussion.

Count II charged *possession* of lottery tickets on October 1, 1958. On that day the police, pursuant to a warrant, raided Lewis' house and found appellants Ellis and Berry in a second-floor bedroom strewn with lottery paraphernalia. Because there was no evidence tending to show that these appellants owned any of these materials or were in control of the premises, the trial judge directed a verdict of acquittal with respect to the possession count.

Count I charged the appellants with *promoting* a lottery from September 18, 1958 to October 1, 1958. In instructing the jury with respect to this count, the trial judge called attention to a provision in the statute which makes possession of lottery tickets prima facie evidence of promoting a lottery. He specifically told the jury it could

" * * * take into consideration the evidence with reference to the observation of the defendants between September 18, 1958 and Octo-

1. D.C.Code, § 22–1501 (1951).
2. D.C.Code, § 22–1502 (Supp. VII, 1959).
3. D.C.Code, § 22–1505(b) (Supp. VII, 1959).
4. 18 U.S.C. § 3109 reads as follows: "The officer may break open any outer or inner door or window of a house, or

any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

ber 1, 1958, *as well as what actually occurred on October 1st, 1958 at the Just Street address,* when the search warrant was executed, in order to determine whether the defendants or any of them had possession of any numbers materials between September 18, 1958 and October 1, 1958 so as to justify the presumption that they were engaged in promoting a lottery." [Emphasis supplied.]

He also explained that:

"Of course it is conceivable that a person might be participating in promoting a lottery in some way, even though he didn't necessarily have actual possession of any materials. That is for you to determine whether the evidence has so indicated in this case."

█ Appellants Ellis and Berry challenge the instructions on two grounds. First, they say that it was inconsistent to direct a verdict of acquittal on the charge of possession on October 1, and then invite the jury to consider the same evidence (namely, their presence at the raided premises) with respect to the charge of promoting a lottery. We cannot agree. Evidence which, if taken alone, is insufficient to support a conviction on one count can, when considered together with other facts, be sufficient to go to the jury on another count. In this case, there was, at least with respect to Ellis, enough other circumstantial evidence of promoting a lottery to raise a jury question.

██ The second objection relates to the trial judge's instruction on the application of the prima facie presumption of

promotion which, under the statute, arises from proof of possession.[5] Both Ellis and Berry claim that they were never shown to possess lottery materials, and that at best any evidence to this effect is circumstantial. They suggest that in the criminal law, where proof of guilt must be established beyond a reasonable doubt, the use of any presumption is fraught with danger and that the danger exceeds tolerable limits when a presumption is rested upon a finding which is itself based solely upon circumstantial evidence.

█ It is well settled that if there is "some rational connection between the fact proved and the ultimate fact presumed," the legislature may authorize the use of a presumption in a criminal case. Yee Hem v. United States, 1925, 268 U.S. 178, 183, 45 S.Ct. 470, 69 L.Ed. 904, quoting from Mobile, J. & K. C. R. R. v. Turnipseed, 1910, 219 U.S. 35, 43, 31 S.Ct. 136, 55 L.Ed. 78. Accord, Casey v. United States, 1928, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632. Since there is a rational connection between possession and promotion, we have upheld convictions for promotion based upon direct evidence of possession. See, e. g., Maynard v. United States, 1954, 94 U.S.App.D.C. 347, 215 F.2d 336. We have also upheld the jury's consideration of strong circumstantial evidence from which it could find possession beyond a reasonable doubt as a basis for invoking similar presumptions. Bates v. United States, 1955, 95 U.S.App.D.C. 57, 219 F.2d 30; Williams v. United States, 1925, 55 App.D.C. 239, 4 F.2d 432.[6] But where the evidence of possession was weak and tenuous, we have refused to allow the jury to rest a

---

5. "The possession of any copy or record of any * * * such [lottery] ticket * * * shall be prima-facie evidence that the possessor * * * did, at the time and place of such possession, keep, set up or promote * * * [a] lottery." D.C.Code, § 22–1501 (1951).

6. Both the Bates and Williams cases upheld convictions for "selling and dealing" in narcotics without payment of the applicable tax. The statute makes possession of narcotics which are not in the

original stamped package prima facie evidence of the crime. 26 U.S.C. § 4704 (a), and predecessors.

In Williams, an informer approached the appellant requesting to purchase narcotics. Appellant agreed, but sent an agent to fetch the drugs from his house since he was busy working on his car. The agent later delivered the cocaine to the informer at a spot that had previously been designated by the defendant. The defendant drove the agent to the rendezvous. This was held to be adequate

presumption of illegal activity thereon. Jackson v. United States, 1957, 102 U.S. App.D.C. 109, 250 F.2d 772.[7] This distinction flows from familiar principles governing the sufficiency of evidence necessary to support the jury's determination of the issues in a criminal case. Cooper v. United States, 1954, 94 U.S. App.D.C. 343, 218 F.2d 39; Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied, 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850.

■ Guided by these principles we examine first the evidence of possession with respect to Ellis. During the period specified in Count I, September 18 to October 1, Ellis was observed by the police officers on at least three occasions. On September 27, he and Davis were seen leaving the Just Street premises (Lewis' home, subsequently raided) at 7:35 p. m. Ellis was carrying a large brown paper bag. On September 29, he, Davis and Berry left the premises at 7:10 p. m., Ellis again carrying a large bag. On October 1, the day of the raid, Ellis was observed entering the Just Street premises at 3:00 p. m., with a large brown bag. When this evidence is viewed in light of the facts (1) that the place to and from which Ellis carried these bags was shown to be a numbers counting house, and (2) that a numbers operation of the size shown here requires the daily assembling of thousands of tickets from all over the city, we think that the jury could rationally conclude beyond a reasonable doubt that the brown bags in Ellis' possession contained numbers slips.

We therefore reject Ellis' attack upon the trial court's instructions to the jury and affirm his conviction.

With respect to Berry, the situation is quite different. There was no probative evidence that he was in possession of numbers slips. The entire testimony concerning his activities reveals only that he was repeatedly in the company of gamblers.[8] While this evidence, standing alone, may be sufficient to raise the eyebrow of suspicion, it is insufficient to raise a question for the jury. Aikens v. United States, 1956, 98 U.S.App.D.C. 66, 232 F.2d 66 (discussion with respect to appellant Kingsbury).

If the record contained evidence, independent of the presumption arising from possession, from which the jury could properly determine that Berry was engaged in the operation of a lottery, we could appropriately order a new trial. But since there is no such evidence, we reverse and remand to the District Court with directions to enter a judgment of acquittal as to Berry. See Jackson v.

---

evidence of possession to allow the jury to invoke the presumption.

In Bates, appellant admitted to her home police officers who were questioning her about some unrelated matter. During the conversation she went to the door and apparently threw something out on the steps. The officers immediately went out to determine what she had thrown, and found an envelope containing narcotics. Although it was raining at the time, the envelope was dry, thus indicating it had just been thrown outside. The court held this to be satisfactory circumstantial evidence of possession.

7. In Jackson the prosecution attempted to prove possession from the fact that narcotics were found hidden in some third person's room to which the defendant had a key. The court refused to allow a presumption of illegal activity to rest upon such slim evidence of possession, saying: "There are too many other and perfectly legitimate reasons why appellant could have had keys to his nephew's room." 102 U.S.App.D.C. at page 110, 250 F.2d at page 773.

8. Sept. 23: Berry was seen driving an Oldsmobile which Davis entered carrying two large brown paper bags.

Sept. 27: Berry was observed leaving the Just Street premises at 7:35 p. m. Five minutes later Davis and Ellis also left.

Sept. 29: Berry was observed entering the Just Street premises. A few minutes later, Davis was seen to enter with a bag. Around 7:10 p. m., Berry, Davis and Ellis left the premises together, Ellis carrying a paper bag; all three entered the same car (a Buick driven to the premises that day by Berry).

Oct. 1: Berry arrived at the Just Street premises at 3:00 p. m., and was found there when the police raided the premises a few hours later.

United States, supra; Aikens v. United States, supra.

No. 15020 is affirmed.

No. 15021 is affirmed.

No. 15170 is affirmed.

No. 15171 is reversed.