CORN PRODUCTS REFINING CO. v. KING.

(Circuit Court of Appeals, Seventh Circuit. January 5, 1909. Rehearing Denied February 19, 1909.)

No. 1,509.

1. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVENESS.

Where plaintiff, a millwright helper, 23 years old, in good health and earning $2.50 a day, sustained an injury to his limb by defendant's negligence, which necessitated an amputation near the hip joint, an allowance of $7,500 was not so excessive as to indicate passion or prejudice.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372, 380; Dec. Dig. § 132.*]

2. MASTER AND SERVANT ( 276*) — INJURIES TO SERVANT — DEFECTIVE CABLE — EVIDENCE.

Where a servant was injured by the fall of an elevator counterbalance weight, evidence *held* sufficient to sustain a verdict finding that the cable supporting the weight was defective, and that defendant knew or should have known of the defect in time to have remedied it before the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 958; Dec. Dig. § 276.*]

3. MASTER AND SERVANT (§ 124*) — INJURIES TO SERVANT — DEFECTIVE APPLIANCES—INSPECTION.

Where an elevator inspector found one of the cables defective at the point where it was wound around the drum, it was his duty to examine all the cables on the same drum; nor could he presume that the part of the cable exposed to the air would be less rust-eaten and defective than the part somewhat protected by the windings on the drum.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235, 238; Dec. Dig. § 124.*]

4. MASTER AND SERVANT (§ 287*)—INJURIES TO SERVANT—QUESTION FOR JURY—NEGLIGENCE OF FELLOW SERVANT.

Where plaintiff was injured by the fall of an elevator counterbalance weight, due to the breaking of the cable, and both plaintiff and his fellow workmen testified that the machinery was not started prior to the accident, whether the machinery was suddenly started by plaintiff's fellow servant, so as to jerk the weight against a beam at the top of the guides, and tear loose the guides and break the cable, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1061; Dec. Dig. § 287.*]

5. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

In an action for injuries to a servant by the fall of an elevator counterbalance weight, alleged to have been caused by a defective cable, whether plaintiff was negligent was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1089; Dec. Dig. § 289.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. MASTER AND SERVANT (§ 219*) — INJURIES TO SERVANT — ASSUMED RISK—DE-
FECTIVE APPLIANCES.

While a servant assumes all the risks naturally inherent in the work he
is employed to do, he does not assume the risk of its being made more
hazardous by the master's negligence in a matter not obvious, and in fact
unknown, to the servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–
624; Dec. Dig. § 219.*

Assumption of risk incident to employment, see note to Chesapeake &
O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Southern
District of Illinois.

John A. Bloomingston, for plaintiff in error.
J. M. Bandy and David E. Keefe, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. In this personal injury case King recov-
ered judgment for $7,500. Defendant contends that the assessment of
damages was excessive and that the court erred in refusing to direct
a verdict of not guilty.

Plaintiff was a millwright helper or apprentice, 23 years old, in good
health, earning $2.50 a day. His left leg was crushed so badly that it
had to be amputated near the hip joint. We do not regard an allow-
ance of $7,500 as evidence that the jury were influenced by passion or
prejudice.

From a cross-bar on defendant's freight elevator a hoisting cable
extended to the top of the shaft, passed over pulleys, and ran down
beside the shaft to a drum fastened to the basement ceiling. As the
hoisting cable wound upon the drum, the elevator was raised; as it
unwound, the elevator was lowered. Another cable was also attached
to the drum, whence it ran to the top of the shaft, passed over a pulley,
and supported a heavy iron weight that was movable in wooden guides
at the side of the shaft. As the hoisting cable wound upon the drum,
the weight cable unwound, and vice versa. The function of the weight
was to exert a strain opposite to that of the hoisting cable and thereby
prevent lost motion. On the day of the accident the elevator was rest-
ing on the bottom of the pit below the floor and the hoisting cable hung
loose from the drum. Plaintiff, whose duty it was to assist in such
carpenter and millwright work about the plant as his superiors directed
him to engage in, was told by the superintendent and also by his fore-
man to go with another workman and replace the cables on the drum.
While plaintiff was seated astride of the cross-bar at the top of the
elevator, reaching over toward the drum, the counterweight cable
broke and the weight fell from the guides, producing the injuries com-
plained of.

Defendant's first insistence is that there was no evidence to sustain
the averments that the cable was in a defective condition and that de-
fendant knew or ought to have known of the defects in time to have
remedied them before the time of the accident. The broken cable was

not exhibited in evidence, and the descriptions given by witnesses are variant. But the jury had the right to accept the testimony of plaintiff that immediately after the accident the cable at the point in question "was all busted and unraveled, looked like 50 or 60 small wires, all sticking out, looked all rusty and black." From this the inference of a rust-eaten condition of long standing might fairly be drawn. But the length of time is established by the testimony of the man whose duty it was to inspect the cables. Two weeks before the accident occurred, he climbed up on the drum of this elevator and found that the cable was rusty and that some of the wires were broken and sticking out. At once he made a written requisition upon the proper general officer for 300 feet of cable for this and another elevator. This witness said:

"I am not able now to state to the jury whether it was the cable on the counterweight I felt or the cable that lifted the elevator."

But if he found the one cable to be defective it was his duty to have examined the other that was on the same drum and subject to the same rust-producing atmospheric conditions of acid fumes and moisture; and defendant is chargeable as of that date with knowledge of what such examination would have disclosed. Attention is called to the fact that the cable at the point where it broke, a short distance from the weight, was never wound upon the drum, and so was not within the range of the inspector's discoveries. But the inspector had no right to presume that the part continually exposed to the air would be any less rust-eaten than the part somewhat protected by the windings on the drum.

It is next urged, in effect, that the negligence of a fellow servant, and not the defective condition of the cable, was the proximate cause of the weight's fall. Stress is laid on testimony for defendant that the man working with plaintiff started the machinery, that the weight was thereby jerked up against a beam at the top of the guides, and that the continued pull of the revolving drum tore loose the guides and broke the cable. Inasmuch as plaintiff and his fellow workman testified that the machinery was not started, the truth of defendant's theory cannot be taken as established beyond rightful rejection by the jury. And if the jury concluded, as they might, that the cable broke because it was so defective that it could no longer hold together under the mere strain of the weight, then well might they further infer that the sudden release of 1,000 pounds or more of iron bars would be likely to push out the four-inch wooden pieces that were screwed to the wooden framework.

Plaintiff neither knew nor had occasion to know of the defective condition of the cable before he went to the scene of the accident. While he was astride the cross-bar of the elevator he found, on reaching for the drum under the edge of the floor, that the hoisting cable was rusty and jagged; but as we read the evidence this was only the instant before the counterweight fell. We find no error in the submission of the question of contributory negligence to the jury. And though plaintiff assumed all the risks that naturally inhered in the work he was employed to do, he did not assume the risk of its being

made still more hazardous by defendant's negligence in a matter not obvious and in fact unknown to him. American Window Glass Co. v. Noe, 158 Fed. 777, 86 C. C. A. 133.

The judgment is affirmed.