**TERMINAL R. ASS'N OF ST. LOUIS
v. HOWELL.**

No. 13555.

Circuit Court of Appeals, Eighth Circuit.

Jan. 9, 1948.

136

See also 155 F.2d 807.

Arnot L. Sheppard, of St. Louis, Mo. (George P. Mueller, of St. Louis, Mo., on the brief), for appellant.

Roberts P. Elam, of St. Louis, Mo. (Harvey B. Cox, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment against appellant in an action brought by appellee to recover damages under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. We shall refer to the parties as they were designated in the trial court. It is alleged in plaintiff's complaint that on July 2, 1944, while he was in the performance of his duty as a car worker for defendant, assisting in the closing of a car door on a car of defendant in its yards in East St. Louis, Illinois, the car door "was caused to and did fall from the car and did strike, knock down, and seriously injure the plaintiff because and as a result of the negligence, carelessness and unlawful conduct of defendant."

Viewing the evidence in a light most favorable to plaintiff, the jury might reasonably have found substantially the following facts: That at the time of receiving his injuries plaintiff was 43 years of age and had been in the employ of defendant as a car repairman for more than two years and prior thereto had been similarly employed by another railroad company for more than fifteen years. On the date in question he was engaged in repair work which included the closing of box car doors. He was working with and under the supervision of a Mr. DeWolf, who is variously referred to in the record as gang leader, supervisor, foreman or boss. Just prior to the incident resulting in plaintiff's injuries these two men had worked on two box cars, closing open doors on both of them. Mr. DeWolf was in charge of the work. He examined the bad order cards on the cars, and when they came to the car door involved in this action DeWolf preceded plaintiff, looked at the bad order card on the car and determined that it said either, "Car door off track," or "Hanger off track." Neither of these expressions indicated that there was any special danger of the door falling from the car during the operation of closing the door. Pursuant to DeWolf's direction, plaintiff brought a chain jack to be used in attempting to close the door. The door was about half open when plaintiff and DeWolf attached the chain jack which is

a device by which tension could be applied to pull the door closed. Plaintiff proceeded to operate the chain jack which applied tension, and pulled the car door part way closed, but as the door had moved about a foot and a half so that it was within 10 or 12 inches from being closed, it stuck at the top. Considerable tension was then put upon it by means of the chain jack but it remained stuck. DeWolf then got up on top of the car for the avowed purpose of seeing what was holding the door back, that being his duty. After looking down from the top of the car toward the door hanging devices, and being within 6 inches of these devices and in position to see them, he called for a small sledge hammer with which he hit the top or end of the door, causing it to move, but further efforts to close it by the chain jack failed. DeWolf hammered on the door to loosen it and plaintiff lightened up the tension on the chain jack. This was repeated a number of times until the door had been moved up to where the bottom of it was against the so-called spark angle, and DeWolf then descended from the top of the car to the ground where plaintiff was working. At that time the door was within an inch of being completely closed and plaintiff was holding light tension on the door with the chain jack. DeWolf then got a small hand pinch bar with which to pry the door edge into the spark angle, and either while he was in the act of getting the pinch bar or after he had gotten it and pried the door, the car door fell from the car and struck plaintiff causing the injuries for which this action was brought. The car door was 6 feet by 6 feet, made of wood and bound with iron, and weighed between 250 and 300 pounds. On the top of the door were two hangers bolted to the door. At the top of these hangers were small metal rollers which rested upon and moved upon a metal track bolted to the top side of the car near the roof. The hangers were such as to conceal the rollers from view of a person on the ground outside the car but they could be seen by one who examined them from the top of the car. The door was normally prevented from coming off the track by metal flanges called guides, being a part of the hanger devices. These guides projected inward and upward behind the door and the metal track upon which the rollers operated. Attached to the side of the car just below the bottom of the door were pieces of metal called shoes, designed to prevent the bottom of the car door from coming out too far from the side of the car but which did not carry any of the weight of the door. The cause of the door falling from the car was that the small rollers which rolled along the car door track were so badly worn that they permitted the metal flanges or guides to come down below and disengage from the track so that they no longer held the door on the track but permitted it to fall outwardly. These conditions could not be observed by a person standing on the ground but could be observed by a person who went up on the top of the car and looked at the hangers from that position.

Plaintiff did not at any time prior to receiving his injuries observe anything defective about the hanging devices at the top of the car door and did not anticipate any danger of the car door falling. He received no warning from DeWolf or otherwise, that the car door was in such condition that it was likely to fall. It was not the duty of the plaintiff but it was the duty of DeWolf to go upon the top of the car to inspect the hanger and other parts of the mechanism by which the door was open and closed. While participating in the work of attempting to close the door plaintiff performed his duty and conducted himself properly pursuant to DeWolf's instructions and in the usual and customary manner. The car in question had been sent to the repair track by one of defendant's car inspectors who had notice that the rear hanger of the car door was off its track and for that reason he placed a bad order card on the door, marking the card to show, "Side Door Off Track." The inspector did not inspect the car, nor did he know that the rollers in the hanger were so worn as to let the car door down to a point where the metal guide behind the door track could disen-

gage and permit the door to fall outward, and he did not put any notice on the bad order card showing that the door was in a dangerous condition.

At the close of all the testimony defendant interposed a motion for a directed verdict on substantially the following grounds: (1) That plaintiff's evidence fails to show any negligence on the part of defendant which was the proximate cause of his injuries; (2) the rule of res ipsa loquitur is not applicable because plaintiff has not shown any specific negligence on the part of defendant; (3) that under the circumstances shown no duty rests upon the defendant to exercise ordinary care to furnish plaintiff with a reasonably safe car upon which to do the work he was engaged in doing at the time of receiving his injuries. This motion was overruled and the cause submitted to the jury on instructions to which defendant saved certain exceptions. The jury returned a verdict for $20,000 in favor of plaintiff and from the judgment entered thereon defendant prosecutes this appeal seeking reversal on substantially the following grounds: (1) The court erred in denying defendant's motion for a directed verdict; (2) error in certain portions of the charge to the jury; (3) plaintiff suffered no physical injury and his testimony relative thereto was incredible.

■■ In considering the question of the sufficiency of the evidence to make an issue for the jury the evidence must be viewed in a light most favorable to plaintiff and our prerogative is limited to determining whether when so considered there is substantial evidence to sustain the verdict. As said by us in the recent case of Chicago & N. W. Ry. Co. v. Green, 164 F.2d 55, 59:

"In connection with what we have said, there must be kept in mind the emphasis in the recent decisions of the Supreme Court that the scope of jury inference in cases under the Federal Employers' Liability Act must be liberally and not narrowly or stultifyingly viewed."

■ Under the Federal Employers' Liability Act as it now stands there are no affirmative common law defenses available to the defendant and the only question is whether the injury complained of resulted in whole or in part from the negligence of defendant. Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S.Ct. 1062, 87 L. Ed. 1444; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; 45 U.S.C.A. §§ 51 and 54.

■■ It is contended by defendant that the work in which plaintiff was engaged was inherently of such a character that he assumed the risk of the danger as a hazard of his occupation. It is argued that the car door was out of repair and consequently the place in which plaintiff was required to work was unsafe; that it was plaintiff's duty to make it safe, and that under such conditions it could not logically be held that the defendant was negligent in not furnishing plaintiff with a safe place in which to work. There is no absolute duty on the part of the employer to furnish a safe place in which his employee is required to work but he is required to exercise ordinary care to see that the employee is furnished with such a place. In other words, the employer is not an insurer of the safety of the place to work nor of any of the instrumentalities or tools with which the employee is required to work. The defense of assumption of risk has been specifically negatived by the statute and the only question is whether under all the facts and surrounding circumstances, including the nature of the work in which plaintiff was engaged, defendant exercised such reasonable care. The fact that plaintiff's work was dangerous did not excuse defendant from exercising the care that a reasonably prudent person would exercise under all the circumstances. The duty of exercising such care becomes more "imperative" as the risk increases. As said by the Supreme Court in Patton v. Texas & P. R. Co., 179 U.S. 658, 664, 21 S.Ct. 275, 278, 45 L.Ed. 361:

"Reasonable care becomes, then, a demand of higher supremacy; and yet, in all cases it is a question of the reasonableness of the care; reasonableness depending upon the danger attending the place or the machinery."

Under the evidence we think the jury could reasonably have found that plaintiff's foreman, DeWolf, after he had climbed to the top of the car in question and made his examination of the hangers, rollers and guides, knew or by the exercise of ordinary care should have known their condition and the danger in attempting to close the door as he was directing plaintiff to do, yet he failed to impart that knowledge to plaintiff or to warn him of the danger of the door falling. Even though the work may have been inherently dangerous, yet the bad condition of these rollers and hanging devices enhanced that normal danger, and the jury might well have found that in the exercise of ordinary care it was the duty of defendant on discovering that danger, which so far as plaintiff was concerned was latent and unknown, to warn him thereof. This negligence rendered the place where plaintiff was employed more dangerous than it would have been had plaintiff been warned, and plaintiff's injuries may well be said to have resulted in whole or in part from such negligence. In Labatt on Master and Servant, 2d Ed., Vol. 3, Sec. 924, it is said:

"In all cases the master must exercise ordinary care to render the place of work reasonably safe for his servants. Where however, * * * the work itself consists of rendering a dangerous place safe, the exercise of such ordinary care may, and frequently does, fail to give to the place of work the same amount of safety that the same degree of care would give to a place of work the conditions surrounding which were permanent. The master's duty is not altered, but the results of the exercise of that duty may differ very materially. The mere fact that there are dangers connected with all work of the general character of that here discussed, which ordinary care on the part of the master can not remove, does not excuse him from liability for injuries due solely to dangers which the exercise of ordinary care would have removed."

See, also: American Window Glass Co. v. Noe, 7 Cir., 158 F. 777; Corn Products Refining Co. v. King, 7 Cir., 168 F. 892; Carlson v. Oregon Short Line & U. N. Ry. Co., 21 Ore. 450, 28 P. 497; Fleming v. What Cheer Mining Co., 194 Mo.App. 206, 186 S.W. 1115; Corby v. Missouri & Kansas Tel. Co., 231 Mo. 417, 132 S.W. 712; Western Union Tel. Co. v. Hickman, 4 Cir., 248 F. 899; Jupollo Public Service Co. v. Grant, 4 Cir., 42 F.2d 18.

We conclude that there was no error in denying defendant's motion for a directed verdict.

The court's instructions numbered IV and V are challenged by defendant. The instructions must, of course, be considered as a whole and when so considered these two instructions are, we think, in accord with what we have already stated to be the applicable law and we shall therefore give them no further attention.

In the first paragraph of its instructions the court after stating that the action was brought by plaintiff to recover damages under the provisions of the Federal Employers' Liability Act, quoted from the Act as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

This portion of the instruction was objected to on the ground that it was too general, misleading and confusing and that it did not limit the consideration of the jury to the facts in this case. If this were the only instruction given there might be some basis for this contention, but, as already observed, the instructions must be considered as a whole and not as independent parts. The office of the court's instructions is to apprize the jury of the questions involved and the rules of law applicable thereto. One of the primary duties of the court is to expound the law to the jury and this is done by means of in-

structions. The basic law governing this case is that which the court in this instruction quoted to the jury. Even in criminal cases it is held as a general rule that where the law governing a case is expressed in a statute the court in its charge should use the language of the statute. A similar objection was urged by appellant in Norfolk & W. R. Co. v. Trautwein, 6 Cir., 111 F.2d 923, 925. In that case the action was brought under the Federal Employers' Liability Act and the court in its instructions read the above quoted statute to the jury. In disposing of the question the court said:

"It will be noted that the court did not predicate a charge of negligence upon any other features than those 'charged in the petition.' We do not think the jury could have been mislead as to the issues."

It would be strange indeed if it could be said to be error to lay down the law in the exact language of the statute upon which the action is based. We think that the court committed no prejudicial error in its charge to the jury. Defendant requested certain instructions which were refused but the action of the court in so doing is not presented by any appropriate assignment or point for review.

It is finally urged that plaintiff's evidence as to his physical condition is so wholly insubstantial and incredible as to amount to a fraud upon the court. This is not argued in connection with the claim that the court erred in denying defendant's motion for a directed verdict, nor was this ground embodied in the motion for a directed verdict. It is not the prerogative of this court to weigh the evidence nor to pass upon the credibility of witnesses. The argument is one which might properly have been and probably was presented to the trial court on motion for a new trial. It appears from the record, however, that there was competent evidence tending to show that as a result of the accident here involved plaintiff sustained a fracture of the first lumbar vertebra; that he was confined in a hospital for some six weeks and was under a doctor's care for ten months after being discharged from the hospital; that he was encased in a plaster body cast extending from his arm pits, for about eight weeks, and was totally disabled from twelve to eighteen months. One of defendant's medical witnesses testified that the man was seriously injured. There was also evidence that he endured great physical pain and suffering. The contention of defendant in this regard is, we think, wholly without merit.

The judgment appealed from is affirmed.