Harold Lee **BATSELL**, Appellant,

v.

**UNITED STATES** of America,
Appellee (two cases).

Nos. 18945, 19344.

United States Court of Appeals
Eighth Circuit.

Nov. 19, 1968.
Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 865.

Ellis Olkon, Minneapolis, Minn., for appellant, and Sheldon J. Eviden, Minneapolis, Minn., on the briefs.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee, Patrick J. Foley, U. S. Atty., and Neil P. Convery, Asst. U. S. Atty., Minneapolis, Minn., on the brief.

Before VOGEL, LAY and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

We are concerned here with two separate appeals in a criminal conviction. The first appeal is from a judgment of conviction entered against appellant-defendant, Harold Lee Batsell, for violation of Section 2422 of the Mann Act, 18 U.S.C.A. § 2421 et seq. The second appeal is from the District Court's denial of defendant's motion, pursuant to Rule 33, Federal Rules of Criminal Procedure, 18 U.S.C.A., for a new trial on the ground of newly discovered evidence. In each case we affirm.

The issues in the appeal from the judgment of conviction will be considered first. The defendant was indicted in the District of Minnesota under 18 U.S.C.A. § 2421 for having procured interstate transportation for one Gloria Jean Hull (hereinafter "Miss Hull") from Minneapolis, Minnesota to New York City "for the purpose of prostitution, debauchery and other immoral purposes, and with intent on the part of [defendant] to induce, entice, and compel [Miss Hull] to give herself up to the practice of prostitution and debauchery and other immoral practices", and under 18 U.S.C.A. § 2422 for having persuaded, induced, enticed and caused Miss Hull to go from Minneapolis to New York for the aforesaid purposes.[1]

---

1. The exact wording of the first indictment is:
"The United States Grand Jury charges:
"That on or about the 22nd day of May, 1966, in the District of Minnesota, Fourth Division,
HAROLD LEE BATSELL
did knowingly procure and obtain an airline passenger ticket from Northwest Airlines, Inc., a common carrier in interstate commerce, said airline passenger ticket to be used by Gloria Jean Hull for travel in interstate commerce from Minneapolis-St. Paul International Airport, Wold Chamberlain Field, District of Minnesota, to New York City, State of New York, for the purpose of prostitution, debauchery and other immoral purposes, and with intent on the part of Harold Lee Batsell to induce, entice, and compel the said Gloria Jean Hull to give herself up to the practice of prostitution and debauchery and other immoral practices, whereby the said Gloria Jean

The two indictments were consolidated for trial. What is hereinafter referred to as the first trial was commenced in the United States District Court in Minneapolis, Minnesota, before the Honorable Earl R. Larson and a jury on March 20, 1967. On March 27, 1967, after considerable testimony had been taken, the court granted defendant's motion for a mistrial.

The second trial, also before Judge Larson and a jury, commenced in St. Paul, Minnesota, on June 5, 1967. This trial resulted in defendant's acquittal of the charge under 18 U.S.C.A. § 2421 (the first indictment) and defendant's conviction for violation of 18 U.S.C.A. § 2422 (the second indictment).

The defendant relies generally on three grounds in his appeal from the judgment of conviction:

"I.

"The defendant was denied a fair trial because the jury's confusion as to the word 'inducement' in the statute 18 U.S.C. § 2422 was never clarified even after the jury requested clarification and the confusion was manifest in the inconsistent verdicts returned by the jury.

"II.

"In view of completely contradictory stories told by complaining witness, [the] evidence was insufficient to sustain conviction.

"III.

"Refusal of the court to allow defendant to recall Gloria Jean Hull, the

key prosecution witness after the prosecution had been allowed to recall her on four separate occasions, constituted reversible error."

In order to properly resolve defendant's contentions, it is necessary to analyze in some detail the proceedings of the first and second trials.

During the first trial, Miss Hull, the alleged victim of the unlawful act charged against the defendant, suffered a "memory loss" until recalled by the prosecution for the fourth time. Upon being recalled the fourth time, she testified, after stating that her memory had returned, that she made the trip from Minneapolis to New York without inducement, enticement or persuasion by the defendant; that she went to New York to run away from her problems; that she did not know what she would be doing in New York; that although she did have sexual adventures in New York, she did so of her own free accord; that she boarded the airplane in Minneapolis with the defendant; and that defendant purchased her plane ticket. At this point defendant's motion for a mistrial was granted.

The second trial was delayed until Miss Hull, who disappeared after the first trial, could be located by the FBI and confined as a material witness under a $10,000 bond. At this trial, Miss Hull testified that she was 18 years of age at the time of the alleged unlawful acts; that she first met defendant when she was 14 or 15; that she attended a reform school for girls at Sauk Center, Minnesota; that the night before the trip to

Hull was transported in interstate commerce in violation of Title 18 U.S.C. 2421."

The second indictment states:

"The United States Grand Jury charges:

"That on or about the 22nd day of May, 1966, in the District of Minnesota, Fourth Division,

HAROLD LEE BATSELL

did knowingly persuade, induce and entice a woman, that is, Gloria Jean Hull, to go from Minneapolis, County of Hennepin, State and District of Minnesota, to New York City, State of New

York, for the purpose of prostitution and debauchery and for other immoral purposes and with the intent and purpose on the part of Harold Lee Batsell that Gloria Jean Hull should engage in the practice of prostitution and debauchery and other immoral practices, and Harold Lee Batsell did thereby knowingly cause Gloria Jean Hull to go and to be carried and transported as a passenger upon the line and route of Northwest Orient Airlines, a common carrier in interstate commerce, in violation of Title 18, United States Code, Section 2422."

New York she stayed at the defendant's father's home in Minneapolis, although her mother's residence was also in Minneapolis; that she was driven to the airport accompanied by the defendant's sister, the sister's boy friend, and the defendant; that she went to New York voluntarily after having been persuaded by the defendant; that it was "understood" that what she would be doing in New York would be prostitution; that after the defendant "persuaded" her to go to New York, she went voluntarily; that defendant purchased her airplane ticket; and that defendant boarded the plane with her. She further testified that the defendant drove her from the New York airport to the Park Sheraton Hotel, where they met Nancy Ubel (who later became defendant's wife); that defendant then took her to the Taft Hotel, where she registered after receiving $20 from him; that he took her to her first "trick" the next morning; and that he subsequently took her to two or three other "tricks". During her sojourn in New York she continued to earn money as a prostitute, giving most of it to Nancy Ubel and to the defendant. Miss Hull's testimony with reference to the trip from Minneapolis to New York, the fact that the defendant accompanied her on the trip, her activities in New York as a prostitute, and the defendant's acquaintance and relationship with her there is substantially corroborated by the testimony of other witnesses. The defendant himself did not testify.

The record indicates that the case was submitted to the jury in the early afternoon of June 8, 1967. At 4:45 p. m. the jury returned to the courtroom and the following transpired:

"THE COURT: I have this written note from the Foreman of the jury: 'Please reread the final instructions to the jury including a definition of terms, especially inducement and intent; also, the specific four points on each indictment.' This is signed by Mr. Cherrier, your Foreman. Do you want me to read all of the instructions?

"JURY FOREMAN: There seemed to be some confusion on our part especially on the term 'inducement' and also in the instructions on the four points that had to do with each indictment. This is what we got hung up on.

"THE COURT: I didn't give you any definition in my instructions of inducement or persuasion or enticement, which are the terms that are used in the instructions. I didn't give you any definitions of those terms because I assumed that these are terms in common usage. On the matter of 'intent,' I did give you three instructions which might have some application on each of the two indictments. I listed the essential elements, which are four in number. Do you want me to reread all of the instructions? Do you want me to reread the instructions as they go to the matter of 'intent' and also the essential elements for each indictment?

"JURY FOREMAN: I think so."

After reiterating the essential elements for the § 2421 indictment, the court stated:

"With respect to Title 18, U.S.C., Section 2422, I instructed you as follows:

"The essential elements required to be proved in order to establish the offense charged under Title 18, Section 2422, are these:

"1. The act of inducing, enticing or persuading a woman or girl, in this case Gloria Jean Hull, to travel in interstate commerce.

"2. Doing such act with the intent or purpose that the woman or girl would engage in prostitution or other immoral practices.

"3. Causing the interstate transportation of a woman or girl, in this case Gloria Jean Hull, by common carrier for the immoral purpose.

"4. Doing such act or acts knowingly and wilfully.

"The burden is on the prosecution to prove all of the essential elements beyond a reasonable doubt.

"(I will reread these four essential elements.)

"(The four essential elements were reread.)

\* \* \* \* \* \*

"JURY FOREMAN: One other point that you brought out earlier had to do with a person going on a common carrier with or without—I believe it was wilfully inducing—for the purpose of inducing an illegal act. I believe that was one of the four points on the intent.

"THE COURT: You are talking about these four points in the essential elements?

"JURY FOREMAN: Yes.

"THE COURT: I will reread the essential elements in 2421.

\* \* \* \* \* \*

"The other section, Section 2422, the four elements are:

"1. The act of inducing, enticing or persuading a woman or girl, in this case Gloria Jean Hull, to travel in interstate commerce.

"2. Doing such act with the intent or purpose that the woman or girl would engage in prostitution or other immoral practice.

"3. Causing the interstate transportation of the woman or girl by common carrier for the immoral purpose.

"4. Doing such act or acts knowingly and wilfully.

"Perhaps this might be sufficient for your purposes now."

The jurors thereafter appeared satisfied with the court's explanation and defendant's counsel took no exception and made no request. On the following day, June 9, 1967, the jurors returned their verdict of not guilty as to § 2421 and guilty as to § 2422. Upon defendant's request, the jurors were polled. Each answered in the affirmative as to the two verdicts.

As noted, defendant contends on appeal that he was denied a fair trial because the jury's alleged confusion as to the meaning of the word "inducement" in § 2422 "was never clarified even after the jury requested clarification \* \* \*." In response to the jurors' written request, the trial court did not substitute or use a synonym for the term "inducement" as used in the instruction or the words "induce" or "induces" as used in the statutes. Instead the court made it perfectly clear that the words "inducement", "persuasion" and "enticement" were to be given their common usage and had not acquired a special legal meaning. The jurors, and defendant's counsel, appeared satisfied with such explanation. Furthermore, the court carefully and meticulously set out the elements of the offenses under §§ 2421 and 2422.

 The word "induces" in § 2422 is one of common usage and meaning and requires no explanation or definition. In the first Mann Act case before the Supreme Court, Caminetti v. United States, 1917, 242 U.S. 470, at 485–486, 37 S.Ct. 192, at 194, 61 L.Ed. 442, the court stated:

"It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms. [Citations omitted.]

"Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion. Hamilton v. Rathbone, 175 U.S. 414, 421 [20 S.Ct. 155, 44 L.Ed. 219]. *There is no ambiguity in the terms of this act.* It is specifically made an offense to knowingly transport or cause to be transported, etc., in interstate commerce, any woman or girl for the purpose of prostitution or debauchery, or for 'any other immoral purpose,' or with the intent and pur-

pose to *induce* any such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice.

"Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them. * * *" (Emphasis supplied.)

This court said through Judge Gardner in Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 1948, 165 F.2d 135, 140:

"It would be strange indeed if it could be said to be error to lay down the law in the exact language of the statute upon which the action is based."

Furthermore, we said in Williams v. United States, 8 Cir., 1964, 328 F.2d 256, 262, cert. denied, 1964, 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 739:

"A court may and generally should, where the law governing a case is expressed in a statute, employ the language of the statute in its instructions. Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 165 F.2d 135, 140; Maynard v. United States, 94 U.S.App. D.C. 347, 215 F.2d 336, 339. Except where the statute is complex or not expressed in ordinary language— which is not the situation here—any amplification which a party may desire to have made must be the subject of a requested instruction by him."

See, also, Caldwell v. United States, 8 Cir., 1964, 338 F.2d 385, 391, cert. denied, 1964, 380 U.S. 984, 85 S.Ct. 1354, 14 L.Ed.2d 277. In addition, Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A., precludes the assignment as error of any inaccuracy in the instructions without first having called the attention of the trial court thereto, thus giving it the opportunity of making correction. No objection or exception was taken here and most certainly this is not a plain error situation under Rule 52(b). Singer v. United States, 1965, 380 U.S. 24, 38, 85 S.Ct. 783, 13 L.Ed.2d 630; Jones v. United States, 8 Cir., 1968, 396

F.2d 66, 67–68; Rimerman v. United States, 8 Cir., 1967, 374 F.2d 251, 255, cert. denied, 1967, 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992; Aggers v. United States, 8 Cir., 1966, 366 F.2d 744, 748, cert. denied, Coates v. United States, 1967, 385 U.S. 1010, 87 S.Ct. 719, 17 L.Ed.2d 548. We find no error, plain or otherwise, in the court's failure to further elucidate the meaning of the words "inducement" or "induces".

■■■ The defendant contends that the fact that the jury returned a verdict of not guilty under § 2421 and guilty under § 2422 indicates its confusion as to the meaning of "inducement" or "induces". We do not agree. It was entirely within the province of the jury to find as it did. Even though it must be conceded that the evidence offered by the government would fully have justified a jury finding of guilty under both § 2421 and § 2422, the offenses proscribed by these sections are separate and distinct. LaPage v. United States, 8 Cir., 1945, 146 F.2d 536, 537, 156 A.L.R. 965. Even if it could be said that the verdicts were inconsistent, this court has held that the inconsistency of verdicts upon separate counts of an indictment does not entitle the defendant to a reversal of the judgment upon the counts for which he was convicted. Jones v. United States, 8 Cir., 1968, 396 F.2d 66, 67–68; Aggers v. United States, 8 Cir., 1966, 366 F.2d 744, 748, cert. denied, Coates v. United States, 1967, 385 U.S. 1010, 87 S.Ct. 719, 17 L.Ed.2d 548.

Under the defendant's general assertion that he was denied a fair trial is the claim that the time for defense counsel's summation was unreasonably limited by the trial court. After both sides had rested and the attorneys were about to commence their arguments to the jury, the court suggested that counsel should limit themselves to not more than one hour on a side. After defense counsel had argued for more than an hour, he was interrupted by the court and his attention called to the matter of time. He was, however, granted another thirty minutes. In all, defendant's counsel

used one hour and forty minutes for his argument.

■■ In presiding over a jury trial, a judge is required to exercise his discretion in many ways, including the determination of the time to be allowed for argument to the jury on each side, the length of direct and cross-examination of witnesses, the keeping of opening statements within proper bounds, the proper conduct of parties, witnesses and counsel, the excluding of witnesses from the courtroom during the examination of other witnesses, etc. This case was neither complex nor protracted in extent. Defense counsel succeeded in obtaining one hour and forty minutes for his summation, despite the court's previous suggestion that each side limit itself to one hour. At the close of defense counsel's argument, he made no complaint to the court and at no time did he point out any issues or facts which he had not had time to discuss with the jury. At no time did counsel object to the original one-hour limitation given by the trial court. Judge Matthes, speaking for this court, said in Butler v. United States, 8 Cir., 1963, 317 F.2d 249, 257, 6 A.L.R.3d 582, 594:

> "It is axiomatic that the limitation of time for arguments of counsel is within the sound discretion of the trial judge.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "A reversal may be required where counsel is restricted within unreasonable bounds so that he is unable to fully and fairly present his case."

See, also, United States v. Mills, 6 Cir., 1966, 366 F.2d 512; United States v. Roviaro, 7 Cir., 1967, 379 F.2d 911; Barnard v. United States, 9 Cir., 1965, 342 F.2d 309, cert. denied, 1965, 382 U.S. 948, 86 S.Ct. 403, 15 L.Ed.2d 356, rehearing denied, 1966, 382 U.S. 1002, 86 S.Ct. 567, 15 L.Ed.2d 491. Here, the limiting of counsel to one hour of argument on each side was not, in our opinion, an abuse of discretion. In granting additional time thereafter, the court exercised substantial liberality with defense counsel, who claimed to be inexperienced and trying his first felony case in federal court. We find no error.

■ Appellant's next contention is that the evidence was insufficient to sustain conviction because of the contradictory stories told by Miss Hull, the prosecution's main witness. The conflict between Miss Hull's testimony at the first and second trials was substantially and repetitiously brought to the jurors' attention during her extensive cross-examination. It was the function of the jury to evaluate this testimony and separate fact from fiction. Evidence is not necessarily insufficient merely because a witness' testimony has been contradictory and the explanations therefor difficult of belief. We also note that Miss Hull's testimony concerning defendant's persuasion of her to travel from Minneapolis to New York City accompanied by the defendant and for the purposes of prostitution is substantially corroborated by other testimony. We find no insufficiency here.

Defendant's last claim of error in his appeal from the judgment of conviction is that the trial court refused to allow him to recall Miss Hull after the prosecution had been allowed to recall her on four separate occasions during the first trial. Be that as it may, Miss Hull was called by the prosecution but once during the second trial, which is the trial which resulted in defendant's conviction and with which we are here concerned. Miss Hull's alleged loss of memory during the first trial and her inconsistent statements were well gone over in cross-examination; an examination of the transcript reveals that 38 pages thereof were utilized by government counsel in direct examination of Miss Hull, whereas defense counsel's cross-examination extends over 78 pages. As defense counsel approached the termination of his cross-examination, the following colloquy occurred:

> "Q [By Mr. Olkon] What I am concerned with, Gloria, is when you are telling the truth. Are you telling the truth now?
>
> "A Yes, I am telling the truth now.

"Q Are you certain that tomorrow you will not have a new story?

"A I am certain I will not have a new story.

"Q Then why for a day and one-half did you tell the Honorable Court and the ladies and gentlemen of the jury that you couldn't remember anything—a simple fact of whether you ever boarded a plane?

"A I told you that answer a million times already.

"THE COURT: This is repetitious, Mr. Olkon.

"MR. OLKON: No further questions.

"MR. CONVERY: No further questions.

"THE COURT: You may be excused, Miss Hull.

"MR. OLKON: Your Honor, I would like to possibly recall her.

"THE COURT: The direct examination was one hour and eight minutes and you have had one hour and 45 minutes of cross-examination. If there is more cross-examination you will continue it right now.

"MR. OLKON: Okay, there is more cross-examination."

Cross-examination then continued for three more pages, after which defense counsel said, "No further questions."

▅▅▅ We find no abuse of discretion upon the part of the trial court. An examination of the entire record indicates complete fairness by the court in all rulings and in granting defendant's requests. The trial court did not limit the cross-examination of Miss Hull, but directed only that if there was to be further cross-examination, it was to be completed at that time. As noted, after defense counsel continued with cross-examination for some time, he ended with the statement, "No further questions."

A thorough examination of the entire record convinces us that defendant had a fair trial and that no error was committed.

We turn now to defendant's appeal from the District Court's denial of defendant's motion, pursuant to Rule 33, Federal Rules of Criminal Procedure, for a new trial on the ground of newly discovered evidence. While defendant's appeal from his judgment of conviction was pending in this court, he filed the above motion on the basis that Miss Hull, on March 6, 1968, had repudiated her testimony and claimed that the defendant did not induce, persuade or entice her to go from Minneapolis to New York in violation of the Mann Act. This court then stayed disposition of the appeal and directed that the District Court consider the motion for new trial. On April 17, 1968, the District Court held a hearing at which Miss Hull (then Mrs. Harpole) testified. She maintained that her testimony at the second trial was the truth. In denying the motion for a new trial on the grounds of newly discovered evidence, the trial court stated:

"On April 17, 1968, Mrs. Harpole [Miss Hull] testified that before March 6, 1968, she had knowledge of a threat from a younger brother of a friend of defendant that if the defendant was convicted she would be killed. She testified also that on or about March 6 that she was afraid of her safety and the safety of her family. It should be noted here that during the first trial the victim's mother had been assaulted by persons considered by the mother to be friends of the defendant.

"Again, it has to be emphasized that the victim testified on April 17, 1968, that she told the truth at the second trial. She has not, therefore, recanted her testimony. The threats the victim describes to her person are real. The threats or coercion defendant's counsel describes are in his mind as indicated in the March 6, 1968, transcript and his questions. The affidavits of the F.B.I. agents refute any claim of threats or coercion. * * *"

▅▅▅ The trial court denied the motion, pointing out that motions for new trial on the grounds of newly dis-

covered evidence based upon recantation of a material witness should be viewed with disfavor and that the five elements necessary to the granting of a motion for a new trial on the ground of newly discovered evidence were lacking herein. We agree with Judge Larson that motions based upon the alleged recantation of a material witness should be viewed with disfavor. We also find that such motions are generally addressed to the sound judicial discretion of the trial court and that there will be no reversal on appeal except for a clear abuse of that discretion. United States v. Johnson, 1946, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562; Connelly v. United States, 8 Cir., 1959, 271 F.2d 333, cert. denied, Caudle v. United States, 1958, 356 U.S. 921, 78 S.Ct. 700, 2 L.Ed.2d 716, rehearing denied, 1958, 356 U.S. 964, 78 S.Ct. 991, 2 L.Ed.2d 1072.

In McCroskey v. United States, 8 Cir., 1965, 339 F.2d 895, 897, we stated:

"Thirty-five years ago, this court, in Johnson v. United States, 32 F.2d 127, 130 (8 Cir. 1929), listed five requirements generally recognized for the granting of a new trial for newly discovered evidence: the evidence must in fact be newly discovered since the trial; facts must be alleged from which the court may infer diligence; the evidence must not be merely cumulative or impeaching; it must be material; and it must be such that, on a new trial, it 'would probably produce an acquittal'. We have repeatedly recognized these in recent cases. Ferina v. United States, supra, p. 107 of 302 F.2d [95]; Connelly v. United States, supra, p. 335 of 271 F.2d [333]; Edgar v. Finley, supra, p. 537 of 312 F.2d [533]."

The guide lines for passing on a motion for a new trial on the ground of newly discovered evidence as set forth in *Johnson* have been consistently applied by this court since. See, also, Anderson v. United States, 8 Cir., 1966, 369 F.2d 11, 19, cert. denied, 1967, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136;

Edwards v. United States, 8 Cir., 1966, 361 F.2d 732, 734. The District Court in this case found that these elements were lacking. We are in complete accord. There was no abuse of discretion in the denial of defendant's motion.

These cases are in all things affirmed.